Michael A. FUENTES, M.D., Appellant,

v.

SOUTH HILLS CARDIOLOGY, St. Clair Hospital, Robert Coyle, M.D., Frank Concilus, M.D., Harshad Mehta, M.D., Richard Russman, M.D. and Clara Jean Ersoz, M.D.

No. 90–3493.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 14, 1990.

Decided Oct. 1, 1991.

Byrd R. Brown, Law Offices of Byrd R. Brown, Pittsburgh, Pa., for appellant.

Walter A. Koegler, Koegler & Tomlinson, Dara A. DeCourcy, Zimmer Kunz Loughran Hart Lazaroff Trenor Banyas & Conaway, Pittsburgh, Pa., for appellees, South Hills Cardiology, Robert Coyle, M.D., Frank Concilus, M.D., Harshad Mehta, M.D.

Richard Russman, M.D., Ronald J. Rademacher, Thomson, Rhodes and Cowie, Pittsburgh, Pa., for appellees, St. Clair Hosp. and Clara Jean Ersoz, M.D.

* Honorable Dolores K. Sloviter became Chief Judge on February 1, 1991.

** Honorable H. Lee Sarokin of the United States District Court for the District of New Jersey, sitting by designation.

Before SLOVITER, Chief Judge,* MANSMANN, Circuit Judge, and SAROKIN, District Judge.**

OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal from the dismissal of his antitrust claim under section 1 of the Sherman Antitrust Act, Dr. Michael Fuentes contends that he adequately pled the requisite jurisdictional element of interstate commerce. We revisit the question of the adequacy of the jurisdictional facts which must be pled for a Sherman Act claim, see, e.g., *Miller v. Indiana Hospital,* 843 F.2d 139, 144 n. 5, *cert. denied,* 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988), in light of the recent instruction provided in *Summit Health, Ltd. v. Pinhas,* —— U.S. ——, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991).[1] Because we hold that, under the standard provided in *Summit Health,* Fuentes has adequately pled the element of interstate commerce necessary to invoke federal jurisdiction, we reverse the district court's order dismissing the case and remand for further proceedings.

I.

Because this action was dismissed for lack of jurisdiction before the filing of any responsive pleading, we accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). We thus review the facts in that light.

Dr. Michael Fuentes was employed as a cardiologist by South Hills Cardiology from July 1, 1986, until August 29, 1986, when he was terminated purportedly as a result of a disagreement concerning patient care. Fuentes's staff privileges at St. Clair Hospital, in Pittsburgh, Pennsylvania, were terminated on September 4, 1986. Fuentes's subsequent efforts to obtain employment in his field of specialty—cardiology—both

1. We took this case under advisement on December 14, 1990, and held it *c.a.v.* pending the Supreme Court's decision in *Summit Health.*

within and outside of Pennsylvania proved fruitless. Fuentes then commenced this action in March of 1989, alleging in Count II that South Hills Cardiology, St. Clair Hospital and five individual physicians [2] acted in concert to effect an interstate boycott of Fuentes in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, *et. seq.*[3]

The United States District Court for the Western District of Pennsylvania referred the matter to a United States Magistrate Judge, who, upon the defendants' motion to dismiss, granted Fuentes an opportunity to amend his complaint "to set[ ] forth with specificity those jurisdictional and factual issues upon which he relies."[4] Fuentes's amended complaint contained the following additional allegations, under "Count III" entitled "Violation of Interstate Commerce":

40. At the time of Dr. Fuentes' termination of hospital privileges, a major portion of St. Clair Hospital's facilities had been financed by federal or out of state funds.

41. At the same time, a substantial portion of the hospital's revenue was generated from federal funds such as Medicare and Medicaid or third party payers located outside of the state.

42. Dr. Fuentes' practice, which included nuclear cardiology at St. Clair's department, generated a national reputation and attracted a significant number of out of state patients.

43. Furthermore, the negative recommendations offered by the Defendants to other health providers to which Dr. Fuentes made application prohibited and/or restricted him free access to practice his profession.

The defendants moved a second time for dismissal under Rules 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure. The Magistrate Judge recommended dismissal upon both grounds, finding that: first, "[the] amended complaint [does] not show that defendants' conduct affects interstate commerce or that defendants maintain an interstate practice," and second, Fuentes has "not shown the existence of a group boycott." By order of June 20, 1990, the district court granted the motion to dismiss, adopting the Magistrate Judge's Report as its opinion.

## II.

### A.

█ Three elements must be alleged to sustain a cause of action under section 1 of the Sherman Act, 15 U.S.C. § 1 (1982): a contract, combination or conspiracy; a restraint of trade; and an effect on interstate commerce. *Weiss v. York Hospital*, 745 F.2d 786, 812 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). The jurisdictional defect alleged here turns on the third element of interstate commerce. As recognized in the Magistrate Judge's Report adopted by the district court, in order to satisfy the inter-

---

**2.** Four of the individual defendants/appellees—Robert Coyle, Frank Concilus, Harshad Mehta and Richard Russman—are cardiologists and partners of South Hills Cardiology; the fifth—Clara Jean Ersoz—an anesthesiologist and vice-president of medical affairs at St. Clair Hospital, "was in charge of the determination as to whether medical doctors obtained staff privileges at St. Clair" (Complaint at ¶ 16).

**3.** The first pendent state law claim, entitled Intentional Interference with Employment Relationship, alleged that all of the defendants had acted to prevent Fuentes from practicing cardiology. Three other pendent claims, brought against St. Clair Hospital and Dr. Ersoz, alleged breach of contract, denial of common law fair procedure rights, and a violation of substantive due process rights. These pendent claims were ultimately dismissed pursuant to the finding of lack of subject matter jurisdiction over the federal claim. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**4.** Other procedural skirmishes occurred that are irrelevant to this appeal except for the fact that they significantly delayed the filing of Fuentes's Amended Complaint. The parties dispute whether, during this delay of approximately five months, Fuentes should have commenced discovery in order to develop more factual support for his allegations relating to the element of interstate commerce. We need not resolve this question since *Summit Health* requires reversal on the allegations as stated in the Amended Complaint.

state commerce element, the defendants' proscribed conduct must be within the stream of interstate commerce or have had a substantial and adverse effect on interstate commerce. *Weiss*, 745 F.2d at 824.

The Magistrate Judge concluded, however, that Fuentes's "conclusory" allegations failed to plead sufficient facts to establish the jurisdictional element of commerce:

> The plaintiff has failed to show, for instance, the percentage of out-of-state patients [a]ffected by the defendants' actions ..., or the percentage of the hospital's annual income derived from Medicare and/or amounts it receives from federal grants-in-aid ..., the amount of drugs and equipment purchased by the hospital in interstate commerce ..., or the percentage of patient bills paid by third-party payors.... (citations omitted).

The Report relied upon *Miller v. Indiana Hospital*, 562 F.Supp. 1259, 1285–86 (W.D.Pa.1983), *reversed on other grounds*, 843 F.2d 139 (3d Cir.), *cert. denied*, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988), for its finding that Fuentes inadequately quantified the alleged effect on interstate commerce. In *Miller*, the district court followed the "effect on commerce" test enunciated in *McLain v. Real Estate Bd. of New Orleans, Inc.*, requiring that the jurisdictional prerequisite " 'is the existence of a demonstrable nexus between the defendants' activity and interstate commerce.' " *Miller*, 562 F.Supp. at 1284 (*quoting McLain*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980)). *Miller* provided an opportunity to amend the complaint and suggested detailed factual allegations that could supply the requisite nexus. *Miller*, 562 F.Supp. at 1284. On appeal, the parties did not contest this issue, but we recognized, in dicta, that allegations concerning the defendant hospital's out-of-state contacts—patients, receipt of medical supplies and federal funds—"satisfies the requirement of affecting interstate commerce." *Miller*, 843 F.2d at 144 n. 5.

In *Weiss v. York Hospital*, likewise relied upon by the Magistrate Judge, we did not address the quantum of evidence required for jurisdiction; rather, we reviewed the substantial evidence produced at trial to conclude that it is the defendant's activities, rather than the plaintiff's, that must satisfy the substantive interstate commerce element. 745 F.2d at 824 n. 65.

**B.**

■ Subsequent to the Magistrate Judge's Report and after this appeal was filed, the Supreme Court made clear in *Summit Health, Ltd. v. Pinhas*, that a quantification of interstate commerce is not necessary in order to satisfy this jurisdictional element. ── U.S. ──, 111 S.Ct. 1842, 1847–48, 114 L.Ed.2d 366 (1991). There an ophthalmologist, terminated by a peer review board, filed a section 1 Sherman Act antitrust action, alleging that he was the victim of a group boycott. The defendant challenged the complaint on the basis that it did not "satisfy the jurisdictional requirements of the Sherman Act ... because it [did] not describe a factual nexus between the alleged boycott and interstate commerce." *Id.* 111 S.Ct. at 1844.

The Court rejected the defendant's argument for two reasons. First, "the proper analysis focuses not upon actual consequences, but rather upon the potential harm that would ensue if the conspiracy were successful." Because a Sherman Act violation can be established even absent proof of an anticompetitive effect where an unlawful purpose is proven, *United States v. United States Gypsum Co.*, 438 U.S. 422, 436, n. 13, 98 S.Ct. 2864, 2873, n. 13, 57 L.Ed.2d 854 (1978), the Court reasoned that Sherman Act jurisdiction could not require "an actual effect on interstate commerce." *Summit Health*, ── U.S. at ──, 111 S.Ct. at 1847.

Second, the Court declined to adopt the restrictive view that any anticompetitive effect on trade was limited only to Dr. Pinhas. "[A] violation of the Sherman Act ... is necessarily more significant than the fate of 'just one merchant whose business is so small that his destruction makes little difference to the economy.' " *Id.* at 1848 (*quoting Klor's, Inc. v. Broadway–Hale*

*Stores, Inc.,* 359 U.S. 207, 213, 79 S.Ct. 705, 710, 3 L.Ed.2d 741 (1959) (footnote omitted)). The Court concluded that "[t]he competitive significance of [the plaintiff's] exclusion from the market must be measured, not just by a particularized evaluation of his own practice, but rather, by a general evaluation of the impact of the restraint on other participants and potential participants in the market from which he has been excluded." *Summit Health,* — U.S. at —, 111 S.Ct. at 1848. Because that market was the ophthalmological market in Los Angeles, the Court determined that denying the plaintiff "access to the market for ophthalmological services provided by general hospitals in Los Angeles has a sufficient nexus with interstate commerce to support federal jurisdiction." *Id.* at 1849.

### C.

The standard announced in *Summit Health* is consistent with the approach we set forth in *Weiss* and *Cardio–Medical Assoc. v. Crozer–Chester Medical Ctr.,* 721 F.2d 68 (3d Cir.1983). We first addressed this issue in *Cardio–Medical Assoc.,* where the district court had required that the plaintiffs show a net change in interstate commerce as a result of the defendants' anticompetitive activity rather than a mere shifting of services from the plaintiff to others. *Id.* at 72–73, 76. We relied upon *McLain,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), for the proposition that no quantum of evidence is required to state a claim; rather it is the effect on interstate commerce that must be demonstrated. This broader view of the burden on trade comports with the acknowledgment that interstate commerce for the Sherman Act is coterminous with that under the Commerce Clause. *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976); *Cardio–Medical Assoc.,* 721 F.2d at 74. This theory of a broader burden on trade also informed our ruling that the alleged aspect of interstate commerce could relate to the activities of the defendants rather than to those of the plaintiffs. *Cardio–Medical Assoc.,* 721 F.2d at 72–73.

We concluded that we should "examine the defendant's conduct both as it affects interstate commerce through the person of the plaintiff and as it affects commerce independently." *Id.* at 75.

■ The jurisdictional test, to be applied on a case-by-case basis, requires that the defendants' anticompetitive conduct "be shown 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." *McLain,* 444 U.S. at 246, 100 S.Ct. at 511 (*quoting Hospital Building,* 425 U.S. at 745, 96 S.Ct. at 1852; *see also Cardio–Medical Assoc.,* 721 F.2d at 72; *Harold Friedman, Inc. v. Thorofare Markets, Inc.,* 587 F.2d 127, 132 (3d Cir.1978). This language, "not insubstantial effect," is apparently a reformulation of the "substantial and adverse effect" standard. *Weiss,* 745 F.2d at 824 n. 64. Fuentes's amended complaint, albeit styled "violation of interstate commerce," and designated as a separate count, served to plead sufficiently this element of his antitrust claim under the standards of *Summit Health.* Thus, Fuentes need not have pled a specific quantum of interstate commerce affected to establish federal jurisdiction under the Sherman Act.

It was sufficient for jurisdictional purposes that Fuentes alleged that "[his] practice ... generated a national reputation and attracted out of state patients." Drawing all reasonable inferences in favor of Fuentes, as we must when a case comes before us in this posture, we infer from this allegation the unexpressed assumption that those out of state patients would not travel interstate but for Dr. Fuentes's care. As *Summit Health* explained, "[t]he competitive significance of [Pinhas's] exclusion from the market must be measured, not just by a particularized evaluation of his own practice, but rather, by a generalized evaluation of the impact of the restraint on other participants and potential participants in the market from which he has been excluded." — U.S. at —, 111 S.Ct. at 1848. As Fuentes's allegation involves the impact of the alleged restraint of trade on other participants, i.e. patients, Fuentes meets that test.

We are cognizant of Fuentes's additional allegations of interstate commerce, *i.e.,* that "a major portion of St. Clair Hospital's facilities had been financed by federal or out-of-state funds," and that "a substantial portion of the hospital's revenue was generated from federal funds." These certainly add to the allegations of impact on interstate commerce. We need not decide, however, whether the allegations concerning the effect on interstate commerce of activities of St. Clair Hospital apart from the alleged unlawful conduct directed at Fuentes would *alone* satisfy the jurisdiction requirement since that question is not squarely before us here. *See Summit Health,* —— U.S. at ——, 111 S.Ct. at 1848 (citing *McLain,* 444 U.S. at 242–43, 100 S.Ct. at 509–10).

We conclude that Fuentes's allegations of an effect on interstate commerce amply meet the test of *Summit Health,* satisfying the interstate commerce element necessary to establish federal jurisdiction in a section 1 action.

### III.

■ There remains, however, the issue of whether Fuentes's complaint should be dismissed for failure to state a claim upon which relief can be granted. For this inquiry, we must also accept as true the factual allegations in the amended complaint and all reasonable inferences that can be drawn from them, and to refrain from granting a dismissal unless it is certain that no relief can be granted under any set of facts which could be proved. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). Count II of the amended complaint sets forth the factual basis for Fuentes's antitrust claim:

31. On or about August 29, 1986 through September 4, 1986, [South Hills Cardiology], Coyle, Concilus, Mehta, and Russman requested St. Clair Hospital and/or Ersoz, to terminate and deny staff privileges at St. Clair to [Fuentes].

32. The aforesaid termination by St. Clair and/or Ersoz of [Fuentes's] associate membership staff privileges at St.

Clair was in direct response to the aforesaid request.

33. At the time of the aforesaid request SCH, Coyle, Concilus, Mehta, and Russman were in competition with [Fuentes] whose privileges were terminated.

34. St. Clair would not have excluded or terminated [Fuentes's] staff privileges for reasons of its own, absent the request made by [South Hills Cardiology], Concilus, Mehta, and/or Russman.

35. Such conduct on behalf of the aforesaid Defendants, constitutes a group boycott creating an unreasonable restraint of trade in violation of Section One of the Sherman Anti–Trust Act, 15 U.S.C. §§ 1 et seq.

36. Said exclusion from St. Clair staff privileges *deprives [Fuentes] of any feasible means of providing health care services in competition with staff physicians.*

The essence of this claim is that the named doctors, South Hills Cardiology and St. Clair Hospital engaged in a group boycott in violation of section 1 of the Sherman Act. Such a claim "requires proof of a contract, combination or conspiracy, a restraint of trade, and an effect on interstate commerce." *Miller,* 843 F.2d at 144. Since we have already determined that the jurisdictional requirement that there be an effect on interstate commerce has been satisfied, we must ascertain whether Fuentes has alleged sufficient facts of conspiracy and restraint of trade.

In support of his conspiracy allegation, Fuentes asserted that between August 29, 1986, and September 4, 1986, South Hills Cardiology, Coyle, Concilus, Mehta and Russman requested that St. Clair Hospital and/or Dr. Ersoz terminate and deny staff privileges to Fuentes. As a result of this request, Fuentes's staff privileges were terminated. In *Black & Yates v. Mahogany Ass'n,* 129 F.2d 227, 231–32 (3d Cir. 1942), *cert. denied,* 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942), our court stated that "[a] general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient

of itself to constitute a cause of action ...[;] plaintiffs must plead the facts constituting the conspiracy, its object and accomplishment." Applying our standard, i.e., accepting the factual allegations made in the amended complaint and all reasonable inferences that can be drawn from them as true, we find that Fuentes has alleged that the defendant doctors from South Hills Cardiology successfully conspired to cause St. Clair hospital to terminate Fuentes's staff privileges. Although Fuentes does not allege any meetings or phone calls at which this conspiracy was carried out, his allegations identifying the conspiracy's participants, purpose and motive are sufficient to survive a motion to dismiss.

■ With respect to the restraint of trade requirement, Fuentes asserts that the defendants engaged in a group boycott. A classic boycott involves "concerted action with 'a purpose either to exclude a person or group from the market, or to accomplish some other anti-competitive object, or both.'" *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 183 (3d Cir.1988). Here, Fuentes alleges that the defendants acted in concert to deny Fuentes, a provider of cardiological services, access to the Pittsburgh cardiological market. Consequently, Fuentes asserts, that by eliminating him as a competitor, the boycott successfully reduced competition for the defendants' cardiological services. Therefore, again accepting as true Fuentes's allegations and all reasonable inferences therefrom, we find that such an exclusion constitutes an unlawful restraint of trade.

■ The defendants point out, and indeed the Magistrate Judge recognized, that Fuentes undermines his antitrust claim by asserting elsewhere in the amended complaint an inconsistent motivation, namely that:

> 29. The actions of the Defendants, jointly and/or severally, described above were performed without any justification based upon a legitimate interest of the Plaintiff's previous employers, the Defendants, and were and continue to be performed maliciously and *with the sole*

*purpose of retaliating against the Plaintiff for his reasonable and justified treatment procedures and complaints concerning the judgment and incompetence of [South Hills Cardiology] and St. Clair staff.*

Although this may create a competing inference as to why Fuentes's staff privileges were terminated, it does not, at this stage, suffice to permit the district court to dismiss the amended complaint for failure to state a claim. Certainly, in a later stage of the proceedings, Fuentes may encounter difficulty satisfying the *Monsanto* standard requiring that he present evidence "that tends to exclude the possibility that the [alleged conspirators] were acting independently." *Monsanto Co. v. Spray–Rite Service Corp*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984).

### IV.

Accordingly, the district court's order granting the defendants' motion to dismiss will be reversed and the case remanded for further proceedings.