**SWARTHMORE RADIATION ONCOLOGY, INC., Oncology Services, Inc., and Oncology Associates, P.C., Plaintiffs,**

**v.**

**Melvyn J. LAPES, M.D., Alan E. Morrison, Andrew J. Solan, M.D., Riddle Memorial Hospital, and Taylor Hospital, Defendants.**

Civ. A. No. 92–3055.

United States District Court,
E.D. Pennsylvania.

Dec. 10, 1992.

---

Allen D. Black, Arthur M. Kaplan, Fine, Kaplan & Black, Philadelphia, PA, for Swarthmore Radiation Oncology, Inc., Oncology Services, Inc. and Oncology Associates, P.C.

Alan M. Sandals, Berger & Montague, P.C., Edward C. Mengel, Jr., White and Williams, Philadelphia, PA, for Melvyn J. Lapes, M.D. and Andrew J. Solan, M.D.

Norman E. Greenspan, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Alan E. Morrison.

Gordon W. Gerber, Henry Kolowrat, Dechert, Price & Rhoads, Philadelphia, PA, John T. Macartney, St. Davids, PA, for Riddle Memorial Hosp.

Thomas J. Lovelass, Barley, Snyder, Senft & Cohen, Christopher W. Mattson, Lancaster, PA, for Taylor Hosp.

## MEMORANDUM

GAWTHROP, District Judge.

Before the court are motions to dismiss filed by all five defendants, as well as the motion of defendants, Drs. Lapes and Solan, to strike plaintiff's claim for injunctive relief. Based on the following reasoning, I shall deny all the motions.

In this antitrust action, plaintiffs allege that defendants conspired to arrange and execute a group boycott of plaintiffs' new cancer treatment center in Swarthmore, Pennsylvania, with the purpose, and eventual result, of driving the center out of business. They seek compensatory, declaratory, and injunctive relief.

*Motions to Dismiss*

Defendants move to dismiss on the ground that plaintiffs have failed to allege sufficient facts upon which the trier of fact could find that defendants organized a group boycott of plaintiffs' cancer treatment center, which boycott caused the failure of plaintiffs' center.

When considering a motion to dismiss, the court must "accept as true all facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Fuentes v. South Hills Cardiology*, 946 F.2d 196, 197 (3d Cir.1991). The court may grant a motion to dismiss only if it finds that the plaintiff cannot prove any set of facts, consistent with the complaint, which would entitle it to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). I find that plaintiffs' complaint does make allegations upon which the trier of fact could find that defendants violated the Sherman Antitrust Act. Therefore, I shall deny defendants' motions to dismiss.

At oral argument, defendants argued that plaintiffs' complaint was defective in at least four ways, and that if the court agreed with defendants on any one of the four defects, the case should be dismissed. I shall address each suggested defect in turn.

■■■ First, defendants argue that plaintiffs' complaint fails to allege specifically the parties with whom defendants supposedly conspired to organize the boycott of plaintiffs' center. It is true that antitrust claims must be pleaded with reasonable specificity. *Commonwealth v. Pepsico*, 836 F.2d 173 (3d Cir.1988). However, the Supreme Court has held that, "in antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976) (citation omitted). In paragraphs 12 through 30 of their complaint, plaintiffs allege various conspiratorial activities on the part of the five named defendants. In addition, plaintiffs allege in paragraph 31 of the complaint that "[v]arious persons not made defendants in this Complaint are believed to have participated as co-conspirators with the defendants ..." Accepting as true the allegations of paragraphs 12 through 30, I draw a reasonable inference that plaintiffs can, upon further investiga-

tion, determine who the other alleged co-conspirators are. Plaintiffs have alleged enough conspiratorial activities between and among the five named defendants to support the allegations that those defendants participated in a conspiracy with each other and with other, as yet unnamed, co-conspirators.

■■ Defendants' second argument is that plaintiffs do not allege that they sought patient referrals from Swarthmore-area physicians; rather, the argument goes, plaintiffs simply allege that they built a state-of-the-art facility and that not many patients were referred to that facility. Defendants rely on *Out Front Productions v. Magid*, 748 F.2d 166, 170 (3d Cir.1984), for the proposition that an antitrust claimant must show not only that it "had the background, experience, and financial ability to make a viable entrance [into the market], but even more important, that it took affirmative actions to pursue the new line of business." But plaintiffs do allege that they took "affirmative actions," particularly in their contacts with the named defendants prior to opening the facility. In addition, plaintiffs threw a "Grand Opening" unveiling their brand new facility and thereby advertising to the relevant medical-referral community their availability and willingness to perform radiation therapy. In *Out Front Productions*, the plaintiff lost on summary judgment when it failed to show that it had made sufficient marketing efforts. If, on a summary judgment motion or at trial, plaintiffs fail to show what "affirmative actions" they took to solicit business, they may very well lose their case. However, at this stage of the proceedings I find that plaintiffs have alleged sufficient attempts to drum up business.

[4] Third, defendants argue that plaintiffs have not alleged that defendants had control over plaintiffs' potential referral sources. Defendants rely on *Northwest Wholesale Stationers v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985), and *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986), for

the proposition that, in order to be liable *per se* for a group boycott, defendants must either be dominant in the relevant market or be in a position to prevent plaintiffs from receiving a vital source of supplies. Plaintiffs rely on *Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985), for the proposition that courts may use a *per se* standard when examining group boycotts in the health care industry. Defendants counter that Footnote 6 in *Miller v. Indiana Hosp.*, 843 F.2d 139 (3d Cir.1988), questions the continuing validity of the *Weiss* holding in light of *Northwest Wholesale Stationers* and *Indiana Fed'n of Dentists*. However, I need not reach the question of whether to apply a *per se* standard or a "rule of reason."

In *Fuentes v. South Hills Cardiology*, 946 F.2d 196, 202 (3d Cir.1991), a group boycott case decided after *Miller*, the Third Circuit held that "allegations identifying the conspiracy's participants, purpose and motive are sufficient to survive a motion to dismiss." Dr. Fuentes sued a cardiology center, a hospital, and five doctors, alleging that the defendants acted in concert to deny him access to the Pittsburgh cardiological market, thereby reducing competition against the defendants' cardiological services. The court held that Dr. Fuentes's broad allegations were sufficient to survive a motion to dismiss. The *Fuentes* court did not reach the question of whether a *per se* rule or a "rule of reason" applied, nor did it discuss market share or market control.

Following the lead of the *Fuentes* court, I need not decide, at this stage of the proceedings, whether a *per se* rule or a "rule of reason" applies. Nor must I consider whether plaintiffs have alleged sufficient market dominance by defendants. Plaintiffs' allegations of conspiratorial activity here are more specific than the *Fuentes* allegations. The complaint identifies, albeit a bit vaguely, the conspiracy's participants, purpose and motive. That is all that is required of plaintiffs at this early stage.

Defendants' final assertion at oral argument was that plaintiffs' conspiracy allegations do not exclude the possibility of independent action on the part of the defendants. Therefore, the argument goes, the complaint should be dismissed under *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), which held that "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." The Supreme Court there went on to hold that plaintiffs had to show "that the inference of conspiracy is reasonable in light of the competing inferences of independent action ..." in order to defeat a motion for summary judgment. However, the Court made clear in *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. ——, ——, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992), that *Matsushita* had not altered the summary judgment standard: "*Matsushita* demands only that the nonmoving party's inferences be reasonable in order to reach the jury, a requirement that was not invented, but merely articulated, in that decision."

Furthermore, *Matsushita* was decided on a motion for summary judgment, rather than on a motion to dismiss. On a motion to dismiss like the one at bar, I must accept *all* the facts pled in the complaint as true, and I must draw *all* reasonable inferences from those facts in favor of plaintiffs. I am not permitted to weigh competing inferences. I find that the facts pled by plaintiffs are sufficient to support an inference that defendants acted conspiratorially to put plaintiffs' center out of business. Whether this inference is ultimately proven to be true is not yet at issue. Such a consideration may be proper on a motion for summary judgment or at trial, after plaintiffs have had ample opportunity for discovery, but it is not a proper consideration on a motion to dismiss.

■ Defendant Taylor Hospital argues in its brief that it could not have been part of a conspiracy to prevent referrals to plaintiffs' center because hospitals don't make referrals; physicians do. However,

plaintiffs allege that Taylor and Riddle Hospitals discouraged their staff physicians and other physicians in the Swarthmore area from making referrals to plaintiffs' center. These allegations are sufficient to support a claim that the hospitals participated in the alleged conspiracy.

■ Defendant Riddle Hospital argues in its brief that plaintiffs have not alleged that defendants had the type of anti-competitive motives which could have led them to enter into a boycott of plaintiffs' center. However, plaintiffs' complaint alleges that Taylor Hospital, Riddle Hospital, and Drs. Lapes and Solan were planning a joint venture to build a cancer treatment center of their own, and that those defendants felt threatened by the opening of plaintiffs' center. Such allegations, when accepted as true, are strong enough to impute anti-competitive motives to defendants.

Defendants also point out in their briefs that plaintiffs do not allege that doctors in the Swarthmore area were prepared to make referrals to plaintiffs' center, and that they then changed their minds when approached by defendants. Defendants ask the court to draw the inference that Swarthmore area doctors simply continued their practices of referring patients to the same centers to which they had always referred them in the past. While this is a reasonable inference, it falls far short of being an inexorable conclusion. And significantly, since it is an inference favorable to the defendants, I am not permitted to make that inference at this procedural juncture.

■ Defendants Drs. Lapes and Solan argue that plaintiffs' complaint fails to allege that those defendants participated, or were even capable of participating, in a conspiracy. Drs. Lapes and Solan claim that they are only alleged to have acted together with the hospitals and in the interests of the hospitals. If the doctors only acted in the interests of the hospitals, then, they say, they were not capable of conspiring with the hospitals. However, this view of the complaint is not a fair one. The complaint alleges that the doctors and the hospitals were separate entities, independent of one another, yet acting in concert to achieve a mischievous end. Such allegations are adequate to survive a motion to dismiss a civil conspiracy claim.

*Motion to Strike Plaintiff's Claim for Injunctive Relief*

■ Drs. Lapes and Solan move to strike plaintiffs' claim for injunctive relief on the grounds that plaintiffs' alleged continuing injury is speculative and that it would be bad policy for the court to order doctors to refer patients to a particular center.

While it is true that plaintiffs' center is now closed, one may readily infer from the complaint that plaintiffs would like to reopen their center, or at least to sell it at a reasonable price. Plaintiffs assert that neither course of action would be possible if defendants' alleged conspiratorial activities were allowed to continue. At this stage of the proceedings, I must accept as true plaintiffs' allegation that defendants' alleged activities are likely to continue unless enjoined. Plaintiffs have thus made out a claim that their injury is of a continuing nature.

As for the policy argument, Drs. Lapes and Solan assert that plaintiffs seek an injunction ordering doctors to refer a certain percentage of their patients to plaintiffs' center. I do not read plaintiffs' claim that way. What plaintiffs seek in Paragraph c of their Prayer for Relief is an injunction which would prevent defendants' from engaging in conspiratorial activities in the future, not one which would set referral quotas. The Supreme Court has held that "[h]aving found the [defendant] guilty of a violation of the Sherman Act, the District Court was empowered to fashion appropriate restraints on the [defendant]'s future activities both to avoid a recurrence of the violation and to eliminate its consequences." *National Soc'y of Professional Eng'rs v. United States*, 435 U.S. 679, 697, 98 S.Ct. 1355, 1368, 55 L.Ed.2d 637 (1978). Plaintiffs here ask for relief which would clearly be available if defendants' are eventually found to have violated the Sherman Act.

An order follows.

**522**

## ORDER

AND NOW, this 9th day of December, 1992, upon consideration of the Motions to Dismiss of defendants Taylor Hospital, Riddle Hospital, Mr. Morrison, and Drs. Lapes and Solan, plaintiffs' response to those motions, and defendants' respective replies, and after argument in open court, it is ORDERED that all four motions are DENIED.

Further, upon consideration of the Motion of defendants Drs. Lapes and Solan to Strike Plaintiffs' Request for Injunctive Relief, plaintiffs' response thereto, and the reply of defendants Drs. Lapes and Solan, and after oral argument in open court, it is ORDERED that the motion is DENIED.