**George G. BOCOBO, M.D., Plaintiff,**

v.

**RADIOLOGY CONSULTANTS OF SOUTH JERSEY, P.A.; South Jersey Health System, Inc.; Paul Chase, D.O.; and Alliance Radiology Associates, L.L.C., Defendants.**

**Civil Action No. 02–1697 (JEI).**

United States District Court,
D. New Jersey.

Feb. 25, 2004.

Obermayer, Rebmann, Maxwell & Hippel, LLP by Gregory D. Saputelli, Esq., Kimberly Sutton, Esq., Cherry Hill, NJ, for Plaintiff.

Sherman, Silverstein, Kohl, Rose & Podolsky, P.A. by Alan C. Milstein, Esq., Pensauken, NJ, for Defendants Radiology Consultants of South Jersey, P.A., Paul Chase, D.O., and Alliance Radiology Associates, Inc., L.L.C.

Jackson Lewis LLP by Brett M. Anders, Esq., Morristown, NJ, for Defendant South Jersey Hospital System, Inc.

Giordano, Halleran & Ciesla, Esqs. by Frank R. Ciesla, Esq., Middletown, NJ, for Defendant South Jersey Hospital System, Inc.

## OPINION

IRENAS, Senior District Judge.

On April 12, 2002, George G. Bocobo, M.D. ("Bocobo" or "Plaintiff") filed suit against Defendants Radiology Consultants of South Jersey, P.A. ("Radiology Consultants"); South Jersey Health System, Inc. ("South Jersey"); Paul Chase, D.O. ("Chase"); and Alliance Radiology Associates, L.L.C. ("Radiology Associates"). Count I of Plaintiff's thirteen-count Complaint alleges that Defendants conspired to boycott him from practicing radiology in the Cumberland County area in violation of Section 1 of the Sherman Act and monopolized the delivery of radiology services in Cumberland county in violation of Section 2 of the Sherman Act.[1] In Count II, Plaintiff asserts that Defendants "engaged in a conspiracy to restrain trade in and monopolize, the practice of radiology in Bridgeton, New Jersey" in violation of New Jersey's Anti–Trust Act (N.J. Stat. Ann. § 56:9–1 to –19).[2] Currently before

---

[1]. A valid claim under section 1 of the Act must show: "(1) a contract, combination or conspiracy; (2) in restraint of trade; and (3) an effect on interstate commerce." *Nanavati v. Burdette Tomlin Mem'l Hosp.,* 857 F.2d 96, 118 (3d Cir.1988); *see also* 15 U.S.C. § 1.

A valid claim under section 2 of the Act must show: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *see also* 15 U.S.C. § 2.

[2]. The substance of the relevant provisions of the Sherman Act and the New Jersey Anti–Trust Act are "virtually identical." *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.,* 282 N.J.Super. 140, 659 A.2d 904, 920 (1995). "The Legislature intended the Act as consistent with federal antitrust law, and ex-

the Court is Defendants' motion for summary judgment as to both counts.

## I.

Bocobo's relationship with Defendant South Jersey began in January 1985 when he was granted staff privileges to practice radiology at Bridgeton and Millville Hospitals, both of which were owned by South Jersey and located in Cumberland County, New Jersey. In 1993, South Jersey advised its staff radiologists that in order to continue practicing at Bridgeton and Millville they would need to form a practice group. Radiologists on staff then formed Radiology Consultants. Bocobo became a stockholder and employee of the corporation. On August 27, 1993, South Jersey awarded an exclusive contract to Radiology Consultants to provide radiology services to Bridgeton and Millville hospitals.

Around this time, tensions and disputes emerged between Bocobo and Defendants. The substance of those conflicts is not relevant to this motion. It is sufficient to say that these difficulties allegedly prompted Chase, in early 2001, to create a new corporation, Alliance Radiology Associates, L.L.C. ("Radiology Associates") and to enter into negotiations with South Jersey to replace Radiology Consultants as the exclusive provider of radiological services at Bridgeton and Millville hospitals. Bocobo was not invited to join the new corporation and only learned of Chase's activities on April 13, 2001, when Chase's counsel notified him that, effective July 13, 2001, his employment with Radiology Consultants would be terminated. On August 1, 2001, approximately two weeks after his termination, Bocobo joined the staff of the University of Pennsylvania Health System. The new position was at a reduced salary and offered fewer benefits. Radiology Associates was awarded the exclusive contract with South Jersey on August 12, 2001.

Bocobo filed suit in this Court in April 2002. Defendants filed this motion for summary judgment as to Counts I & II on January 30, 2004. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Despite the "factually intensive" nature of antitrust cases, "the standard of Fed.R.Civ.P. 56 remains the same." *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 481 (3d Cir.1992) (en banc), *cert. denied*, 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992); *see also Eastman Kodak Co. v. Image Technical Serv., Inc.*, 504 U.S. 451, 468, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

pressly provided that it 'be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it.'" *Id.* (internal citations omitted).

## III.

The issue before the Court, which was extensively addressed at oral argument, is whether Plaintiff has standing to bring his antitrust claims. A private right of action for federal antitrust claims is set forth in section 4 of the Clayton Act, "which provides for suits by 'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws....'" *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 875 (3d Cir.1995) (citing 15 U.S.C. § 15(a)). Standing to bring an antitrust claim turns on a plaintiff's ability to show: (1) that he has suffered an "antitrust injury;" and (2) that he is the proper plaintiff to bring the claim.[3] *Alberta Gas Chem., Ltd. v. E.I. DuPont De Nemours & Co.*, 826 F.2d 1235, 1240 (3d Cir.1987); *see also Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990); *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Proving an antitrust injury for the purposes of standing is a separate inquiry from whether there has been an actual substantive antitrust violation. *See Balaklaw v. Lovell*, 14 F.3d 793, 800 (2d Cir.1994) (noting that although a group boycott "which consist[s] of agreements by two or more persons not to do business with other individuals, or to do business with them only on specified terms, may in some limited circumstances constitute a per se violation[ ] of the Sherman Act ... [f]or standing purposes ... whether there was or was not a per se violation is irrelevant"); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1419 (7th Cir.1989).

Plaintiffs alleging an antitrust injury must show more than mere harm from a defendant's action; they must show an "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp.*, 429 U.S. at 489, 97 S.Ct. 690. It is well-settled that the antitrust laws were "enacted for the protection of competition, not competitors." *Id.* at 488, 97 S.Ct. 690 (quoting *Brown Shoe v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)); *see also Urdinaran v. Aarons*, 115 F.Supp.2d 484, 489 (D.N.J.2000) (finding it "well-settled that the gravamen of an antitrust action is the alleged restraint's effect on competition, not competitors"). Therefore, a plaintiff must show that he has been "adversely affected by an *anticompetitive* aspect of the defendant's conduct." *Atlantic Richfield*, 495 U.S. at 339, 110 S.Ct. 1884 (emphasis in original).

To determine if Plaintiff has suffered an antitrust injury, the Court must determine if competition in the relevant market has been impermissibly affected, which, of course, requires the Court to define the relevant market or markets.[4] Here, there

3. Elements a court must consider to determine whether a plaintiff is the proper plaintiff to bring a claim include: "(1) the causal connection between the alleged antitrust violation and the harm to the plaintiff; (2) the existence of an improper motive; ... (4) the directness of the connection between the injury and the alleged restraint in the relevant market; (5) the speculative nature of the damages; and (6) the risk of duplicative recoveries or complex apportionment of damages." *Balaklaw*, 14 F.3d at 798 n. 9 (discussing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n. 31, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)); *see also Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n. 5, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 274 (3d Cir.1999). Because the Court finds that Plaintiff has not suffered an antitrust injury, however, it need not evaluate these additional elements. *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 266 (3d Cir.1998).

4. Although the relevant market is generally a question of fact for the jury, it can be decided as a matter of law. *Seidenstein v. Nat'l Med.*

are two potentially affected markets: (1) the market in which consumers purchase radiology services; and (2) the market in which radiologists compete for jobs to provide services. *See Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 477 (7th Cir.1988) (finding that, in a suit brought by a pathologist against a hospital and a laboratory alleging that an exclusive contract violated the Sherman Act, the relevant market was "the market in which pathologists compete for jobs").

As to the first potential market, it is clear that Dr. Bocobo's participation or exclusion has no impact on consumers. On the whole, patients do not choose their radiologists. Radiology services are largely inpatient or clinic based and when those services are provided in a private outpatient setting, patients most often rely on physician referrals. Thus, consumers generally are unaware of who reads their x-rays or runs their tests and the presence or absence of a single doctor has no impact on the market. Where consumers are not affected by a change in the market, there is no anticompetitive effect. *See Balaklaw*, 14 F.3d at 796–99 (finding no anticompetitive effect where the substitution of one provider for another did not change the market "[f]rom the consumers' point of view"); *see also Collins*, 844 F.2d at 477 (finding that "from the perspective of con-

sumers of medical services [i.e., patients], there is no distinct demand for and thus no market for pathological services").[5]

The second market is the market in which radiologists compete for jobs. Plaintiff argues that this market is geographically limited to "the Cumberland County area, at most, and more likely, the Bridgeton New Jersey area." Pl.'s Br. in Opp'n to Mot. for Partial Summ. J. at 38. Although the Court must construe the facts and inferences at this stage of the proceedings in the l ight most favorable to the Plaintiff, Plaintiff's own submissions indicate that the market in which radiologists compete for jobs is not limited to Cumberland County or Bridgeton. Prior to hiring Chase, South Jersey attempted to recruit a radiologist from Golden, Colorado to become Chairman of the Radiology Department. Pl.'s Compl. ¶¶ 15–20. When that individual declined the position, South Jersey interviewed two other doctors, including Chase who lives in Camden County, New Jersey. *Id.* Further, when Bocobo was terminated from his position with Radiology Consultants, he found a new position within two weeks at the University of Pennsylvania. It appears quite clear that the market in which radiologists compete for jobs to provide services includes, at the very least, southern New Jersey and the Philadelphia area.[6]

*Enter., Inc.*, 769 F.2d 1100, 1106 (5th Cir. 1985) (determining, as a matter of law, the relevant market for the purposes of summary judgment).

5. Radiology shares with anesthesiology, pathology, and emergency medicine this lack of a direct consumer market. Because, however, hospitals still need to provide coverage for these medical services, they frequently enter into exclusive contracts of the type at issue here. *See, e.g., Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984)(upholding an exclusive contract between a hospital and a firm of anesthesiologists); *Collins*, 844 F.2d at 477

(discussing an exclusive contract between a hospital and a group of pathologists).

6. It is even more difficult to confine the job market for radiologists to Cumberland County after one examines number of hospitals in the surrounding counties. In southern New Jersey (Mercer, Monmouth, Burlington, Ocean, Camden, Gloucester, Salem, Cumberland, Atlantic and Cape May counties) there are approximately thirty-six (36) hospitals providing general medical/surgical services. In Philadelphia there are approximately sixteen (16) hospitals providing similar services. *See* http:// www.njhospitals.com/atlantic.htm; http:// www.themedguide.com/docs/cen-

That being the case, there is no evidence that the exclusion of Bocobo from membership in Radiology Associates has negatively impacted competition in the relevant market. It is true, that when South Jersey substituted one exclusive contractor (Radiology Consultants) for another (Radiology Associates) Dr. Bocobo was forced to find a job outside Cumberland County where he had worked for nearly 15 years. However, not only are exclusive contracts permitted under antitrust law, *see Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984), but numerous courts have found that the type of displacement Dr. Bocobo describes is insufficient to establish an antitrust injury for standing purposes. *See, e.g., Balaklaw,* 14 F.3d at 796–99 (finding that plaintiff anesthesiologist did not have standing where the group of which he was a member lost an exclusive contract to another bidder because the injury "came as a result of his losing out in the competition"); *Steuer v. Nat'l Med. Enter.,* 672 F.Supp. 1489, 1502 (D.S.C. 1987), *aff'd* 846 F.2d 70 (4th Cir.1988) (stating that "[m]erely changing exclusive contractors ... cannot constitute a violation of the antitrust laws" even where the substitution has the effect of " 'boycotting or shutting out' the displaced contractor"); *Oksanen v. Page Mem. Hosp.,* 945 F.2d 696, 709 (4th Cir.1991) (en banc) (finding that a doctor did not have standing to bring an antitrust claim merely because "a hospital's decision caused a disappointed physician to practice medicine elsewhere").

Plaintiff, nonetheless, points to several cases which he contends recognize antitrust standing where an individual doctor is excluded from a relevant market. Those cases, however, as Defendants note in their Reply Brief, are not standing cases. Rather, those cases evaluate whether the exclusion of a single doctor from a market creates a sufficient effect on interstate commerce to satisfy the substantive requirements of antitrust claims under sections 1 and 2 of the Sherman Act. *See, e.g., Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991) (finding that the interstate commerce requirement of an antitrust claim under the Sherman Act was met where defendants allegedly conspired to exclude plaintiff, an opthamologist from the Los Angeles market for those services); *Brader v. Allegheny Gen. Hosp.,* 64 F.3d 869 (3d Cir.1995) (applying *Summit Health* and analyzing the effect on interstate commerce of defendants' actions);[7] *Fuentes v. South Hills Cardiology,* 946 F.2d 196 (3d Cir.1991) (applying *Summit Health* and finding plaintiff sufficiently pled the interstate commerce element of a claim under the Sherman Act). This is a wholly different concern than the standing issue before the Court in this motion.

Plaintiff also relies on *Angelico v. Lehigh Valley Hospital, Inc.,* 184 F.3d 268 (3d Cir.1999), to support his position that the exclusion of a single doctor impairs competition sufficiently to confer standing for an antitrust claim. *Angelico,* however,

ters/philly.html. Plaintiff has failed to provide any evidence that the Cumberland County hospitals provide unique or special services that would warrant confining the market to the county.

7. *Brader* did discuss antitrust standing, but did so in the context of a motion to dismiss. The *Brader* court reversed the district court's decision to grant defendants' motion to dismiss because plaintiff satisfied his burden to **plead** an antitrust injury. 64 F.3d at 877. The *Brader* court, however, also stated that the question of antitrust standing is better resolved at summary judgment and that the court was making no determination as to whether plaintiff would be able to satisfy his burden of proof on the issue of standing in the post-pleading stages of litigation. *Id.* at 876.

is factually distinguishable. Dr. Angelico was a cardiothoracic surgeon who claimed he was blackballed from three hospitals in Lehigh and Northampton Counties in Pennsylvania. Dr. Angelico alleged that the defendants engaged in such activities as improperly terminating his staff privileges and "circulating defamatory remarks regarding his interpersonal and patient care skills" in order to exclude him from the relevant market. *Id.* at 272. The district court granted defendants' motion for summary judgment, finding that Angelico lacked antitrust standing. *Id.* 273. The Third Circuit reversed, finding that Angelico did have standing because his injury flowed directly from defendants' "concerted effort to exclude him from the market for cardiothoracic surgery." *Id.* at 274–75.

In contrast, Dr. Bocobo has alleged nothing more than that he was denied the opportunity to participate in an exclusive contract with South Jersey to provide radiology services to a small portion of a larger market. Plaintiff provides no evidence that Defendants engaged in a campaign to defame him nor that his staff privileges had been improperly revoked nor even that he was actually excluded from the relevant market. Here, Bocobo was easily able to continue to compete in the market of radiologists seeking jobs, as is evidenced by his ability to secure a new position with the University of Pennsylvania. In addition, Angelico and Bocobo are different types of doctors. Angelico was a surgeon who directly competed with other surgeons for patients. Consumers, however, generally do not seek out individual radiologists. Therefore, replacing Dr. Bocobo in a practice group has no impact on the market for consumers seeking radiology services. Plaintiff's reliance on *Angelico* is misplaced.

## IV.

The Court recognizes that South Jersey's decision to award an exclusive contract to Radiology Associates has had the effect of forcing Dr. Bocobo to practice outside of Cumberland County. However, there is absolutely no showing that this change has lessened competition in the relevant markets in a manner actionable under the Sherman Act or New Jersey state law. Dr. Bocobo was a competitor in the market who lost in the competition for an exclusive contract; he may have contract or tort claims against Defendants, but he does not have standing to sustain antitrust claims against them. The Court finds that Plaintiff has failed to show an "antitrust injury" sufficient to confer standing for Counts I & II of his Complaint. Defendants' motion for summary judgment as to those counts is granted. The Court will issue an appropriate Order.

## ORDER GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT AS TO COUNTS ONE AND TWO OF PLAINTIFF'S COMPLAINT

Currently before the Court is Defendants Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c) as to Counts I and II of Plaintiff George Bocobo's Complaint alleging violations of federal and state antitrust laws. The Court having reviewed the submissions of the parties and having heard oral arguments on February 19, 2004, for the reasons set forth in an Opinion issued by this Court, which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

**IT IS** on this *25th* day of February, 2004,

**ORDERED THAT:** Defendants' Motion for Summary Judgment as to Counts I and II of Plaintiff's Complaint is **GRANTED.**