## In re: PRESSURE SENSITIVE LABELSTOCK ANTITRUST LITIGATION

### No. MDL No. 1556.

United States District Court, M.D. Pennsylvania.

Feb. 15, 2005.

Stewart M. Weltman, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Joseph A. Murphy, Murrphy, Piazza, & Genello, P.C., Joseph P. Coviello, Joseph E. Mariotti, Coviello & Mariotti, Mary D. Walsh-Dempsey, Thomas J. Gilbride, O'Malley & Langan, P.C., Todd J. O'Malley, Scranton, PA, Richard I. Creighton, Keating, Muething & Klekamp P.L.L.L., Cincinnati, OH, Steven A. Asher, Fox Rothschild, LLP, Howard J. Sedran, Levin, Fishbein, Sedran & Berman, Steven J. Greenfogel, Meredith, Cohen, Greenfogel & Skimick, P.C., Ira Neil Richards, Peter D. Winebrake, Trujillo, Rodriguez & Richards, LLC., Eugene A. Spector, John A. Macoretta, Spector Roseman & Kadroff, Philadelphia, PA, W. Joseph Bruckner, Lockridge, Grindal & Nauen, Samuel D. Heins, Heins, Mills & Colson, PLC, Minneapolis, MN, Joseph M. Barton, Steven O. Sidener, Gold, Bennett, Cera & Sidener LLP, San Francisco, CA, Craig L. Briskin, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York, NY, Kenneth Wexler, The Wexler Firm, Chicago, IL, Mark J. Conway, Dunmore, PA, for Plaintiffs.

Charles J. Phillips, Leisawitz Heller Abramowitch Phillips, P.C., Wyomissing, PA, J. Thomas Rosch, Joshua N. Holian, Karen E. Silverman, Latham & Watkins, San Francisco, CA, Jack M. Stover, Buchanan Ingersoll, Harrisburg, PA, Matthew B. Mock, Timothy B. Hardwicke, Latham & Watkins, Patrick J. Ahern, Baker & McKenzie, Chicago, IL, Jackson N. Steele, Hamilton Gaskins Fay & Moon PLLC, Charlotte, NC, Christopher M. Curran, White & Case, LLP, Julia E. McEvoy, Washington, DC, for Defendants.

## *MEMORANDUM*

VANASKIE, Chief Judge.

In the wake of an announcement by the United States Department of Justice that it was pursuing an action to enjoin a merger in the self-adhesive labelstock industry and was undertaking a grand jury investigation into the competitive practices in that industry, Plaintiffs, seeking to represent a nationwide class of self-adhesive labelstock purchasers, brought this action asserting a conspiracy among self-adhesive labelstock producers to fix prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The named Defendants are Avery Dennison Corporation ("Avery"), the largest producer of self-adhesive labelstock ("SAL") in the United States; Morgan Adhesives Company ("MACtac"), the third largest SAL producer in the United States; Bemis Company ("Bemis"), the parent of MACtac; Raflatac, Inc., a wholly-owned subsidiary of UPM–Kymmene and the second largest SAL producer in the United States; and UPM–Kymmene, a Finnish corporation and a major producer of various types of paper used to produce

labelstock. Presently pending in this matter is the Rule 12(b)(6) motion to dismiss of Defendants Bemis and MACtac, who assert that Plaintiffs have failed to allege facts from which their involvement in the purported conspiracy may be inferred. Because I find to be without merit the movants' contention that antitrust actions such as this one are governed by a heightened pleading standard, and that Plaintiffs have averred sufficient bases for inferring movants' knowing participation in a conspiracy to restrain trade, the motion to dismiss will be denied.

## I. BACKGROUND

The product at issue in this case is used to make self-adhesive, or pressure-sensitive, labels. As described in the Amended and Consolidated Class Action Complaint:

Self-adhesive labelstock is used to create labels for a number of different products and uses, including labels for monitoring the flow of goods through production and distribution, price labels, product information labels, ticket labels, electronic data processing printing labels, functional and security labels and promotional labels for the food and beverage industry, non-food consumer goods industry, the health and beauty industry and the pharmaceutical industry.

\* \* \* \* \* \*

Self-adhesive labelstock generally consists of four elements: a face material, which may include paper, metal foil, plastic film or fabric; an adhesive, which may be permanent or removable and which fixes the label to the surface; a silicon layer or release coating, which allows an easy release of the face material from the base material; and a base or backing material, to protect the adhe-

sive against premature contact with other surfaces, and which can also serve as the carrier for supporting and dispensing individual labels. When the products are to be used, the release coating and protective backing are removed, exposing the adhesive, and the label or other face material is pressed or rolled into place.

(Amended Complaint, ¶¶ 37, 40.)

Plaintiffs allege that "Defendants are by far the largest producers in the self-adhesive labelstock market in the United States, and combined, they control 60–80% of the worldwide market and over 70% of the North American market." (*Id.*, ¶ 45.) Avery, the largest labelstock producer in the United States, is also UPM–Kymmene's largest outside customer of label papers. (*Id.*, ¶ 20.) UPM–Kymmene participates in the SAL industry through its Raflatac Group. (*Id.*) Raflatac, Inc., a Texas corporation, is UPM–Kymmene's wholly-owned subsidiary participating in the North American self-adhesive labelstock market. (*Id.* at ¶ 19.)

Plaintiffs aver that before the expansion of UPM–Kymmene into the relevant market in North America, MACtac (Bemis' wholly-owned subsidiary) and Avery had elected not to compete for customers. (*Id.*, ¶ 48.)[1] Plaintiffs further aver that a decision on the part of MACtac to refrain from competition with Avery would be contrary to its economic self-interest in light of newly developed and considerable excess production capacity. (*Id.*, ¶ 49.) Plaintiffs assert that as a result of the forbearance from competition by the largest SAL producers, "their respective market shares remained relatively stable and so did the prices of labelstock ...." (*Id.*,

---

1. During oral argument conducted on the motion to dismiss, Plaintiffs' counsel acknowledged that MACtac had been erroneously identified as Bemis in a number of para-graphs of the Amended Complaint. (Transcript of Oral Argument ("Tr.") at 29–33.) The error appears evident in paragraphs 47 through 52 of that pleading.

¶ 48.) Plaintiffs further maintain that the entry of UPM–Kymmene into the North American market, notwithstanding the existence of considerable excess capacity, indicates that the largest producers had deliberately refrained from competition and that "prices were being set at supracompetitive levels . . . ." (*Id.*, ¶ 50.) According to Plaintiffs, UPM–Kymmene, through its wholly-owned subsidiary, Raflatac, made a successful entry into the North American market by undercutting prices by 10% or more. (*Id.*, ¶ 50.)

The objective of this aggressive price competition was to have Raflatac acquire a 20% share of the North American market. (*Id.*, ¶ 53.) Avery, the largest outside purchaser of label paper from UPM–Kymmene, "accused UPM–Kymmene of 'destroying the market.'" (*Id.*, ¶ 54.) Plaintiffs assert that, as a result, meetings were conducted between UPM–Kymmene and Avery "to discuss containing the level of price competition between them." (*Id.*, ¶ 55.) The meetings resulted in an understanding that UPM–Kymmene would acquire MACtac in order to attain its goal of a 20% market share, while at the same time refraining from competing with Avery on price. (*Id.*, ¶¶ 55–56.)

UPM–Kymmene and Bemis subsequently entered into an agreement for UPM–Kymmene to acquire MACtac for $420 million. Plaintiffs allege that the sale price was half the amount that Bemis had rejected for MACtac just two years earlier. (*Id.*, ¶ 47.) Plaintiffs further allege that "simultaneous with Bemis' agreement to sell its pressure sensitive labels business to UPM–Kymmene, UPM–Kymmene agreed to sell a European flexible packaging entity to Bemis on favorable terms, thus enabling Bemis to compensate for the loss of its sensitive labels business in North America by doubling its market share of its flexible packaging business in

Europe." (*Id.*, ¶ 58.) According to Plaintiffs:

> Bemis was not just an innocent third party who was merely attempting to sell a business to UPM–Kymmene. In fact, evidence suggests that Bemis and MACtac knew about UPM–Kymmene's agreement with Avery to refrain from future price competition. Prior to the attempted closing of the sale, MACtac's CEO, who had been selected by UPM–Kymmene to head its North American labelstock business after the transaction, stated that the transaction should bring pricing 'discipline' to UPM–Kymmene, a statement which makes no sense in the absence of Bemis/MACtac's awareness of UPM–Kymmene's collusive agreement with Avery to exercise price discipline.

(*Id.*, ¶ 59.)

As noted above, the Department of Justice took action to enjoin the sale of MACtac. In a decision dated July 25, 2003, Judge Zagel of the Northern District of Illinois concluded that there was a probability that the transaction would substantially lessen competition in that it was "probable that price competition will be diminished if the merger goes forward." *United States v. UPM–Kymmene Oyj*, No. 03–C–2528, 2003 WL 21781902, at *12. (N.D.Ill. July 25, 2003).

While the action to enjoin the acquisition of MACtac was pending in the Northern District of Illinois, Scranton Labels, Inc. and a number of other self-adhesive labelstock purchasers commenced antitrust actions against Defendants in this and various other district courts throughout the nation. In total, eleven separate actions were brought. On November 5, 2003, the Panel for Multi–District Litigation consolidated the actions in this Court for pretrial purposes. On February 16, 2004, Plaintiffs filed the Amended and Consolidated

Class Action Complaint. On March 31, 2004, Bemis and MACtac moved for dismissal from this action, while the remaining Defendants answered the amended pleading. Oral argument on the motion to dismiss was held on January 25, 2005. The matter is ripe for disposition.

## II. DISCUSSION

 Plaintiffs assert that Defendants and unnamed co-conspirators "engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain or stabilize prices for self-adhesive labelstock in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1." (Amended Complaint, ¶ 65.) Section 1 of the Sherman Act prohibits "every contract, combination ... or conspiracy in restraint of trade or commerce...." There are three basic elements to a Section 1 claim: (1) concerted or joint action of more than one party; (2) that unreasonably restrains trade; and (3) that affects interstate trade or commerce. *See In re: Carbon Black Antitrust Litig.*, No. Civ.A. 03–10191–DPW, 2005 WL 102966, at *5 (D.Mass. Jan.18, 2005). Plaintiffs contend that MACtac, Bemis and the other Defendants jointly engaged in horizontal price fixing, i.e., " 'where competitors at the same market level agree to fix or control the prices they will charge for their respective goods or services.' " *In re: Flat Glass Antitrust Litig.*, 385 F.3d 350, 356 (3d Cir.2004). Agreements to fix prices are *per se* unreasonable restraints of trade. *Id.* For purposes of their motion to dismiss, Bemis and MACtac challenge only the adequacy of the averments pertaining to their purported participation in the requisite concerted action.

"The existence of an agreement is '[t]he very essence of a section 1 claim.' " *Id.* "Unilateral activity by a single person or entity will not suffice." *Brunson Communications, Inc. v. Arbitron, Inc.*, 239

F.Supp.2d 550, 559 (E.D.Pa.2002). "In other words, there must be a 'unity of purpose or a common design and understanding or a meeting of minds' or 'a conscious commitment to a common scheme.' " *In re: Flat Glass*, 385 F.3d at 357.

In determining whether Plaintiffs have presented a viable claim against MACtac and/or Bemis, the Amended Complaint's factual allegations and all reasonable inferences that may be drawn from them must be regarded as true. *See Fuentes v. South Hills Cardiology*, 946 F.2d 196, 201 (3d Cir.1991). A party may be dismissed on a Rule 12(b)(6) motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Supreme Court has "cautioned that 'summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.' " *Lum v. Bank of Am.*, 361 F.3d 217, 228 (3d Cir.2004). "It is nonetheless improper 'to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged.' " *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.2001).

The motion to dismiss presented in this case appears to rest on three fundamental assumptions. The first premise is that section 1 claims are subject to a heightened pleading requirement. The second assumption is that the Amended Complaint does not advance a theory of concerted action based upon consciously parallel conduct of competitors. Finally, the moving Defendants seem to contend that the only alleged basis for the claim against Bemis is its agreement to sell MACtac to

UPM–Kymmene. Each assumption underlying the motion to dismiss will be examined separately.

### A. The Pleading Standard for Antitrust Conspiracy Actions

Bemis and MACtac maintain that the Complaint is fatally deficient because it does not allege that either of them participated in any communications or meetings with any other defendant or other label-stock producer. In support of this position, they cite to *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988), in which Judge Aldisert wrote that "in this circuit, '[o]nly allegations of conspiracy which are particularized ... will be deemed sufficient.'" They assert that Plaintiffs' failure to plead "requisite details regarding the time and place of the alleged conspiracy," (Br. in Supp. of Mot. to Dismiss, Dkt. Entry 63, at 8), compels their dismissal.

■ As pointed out by Plaintiffs, *Pepsi-Co* was decided before Supreme Court rulings that rejected the creation of heightened pleading standards for various causes of action. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (no heightened pleading requirement for employment discrimination claims); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (no heightened pleading requirement for claims of municipal liability in civil rights actions). In *Leatherman*, the Court emphasized that Rule 8(a) of the Federal Rules of Civil Procedure established a "liberal system of 'notice pleading,'" which "[does] not require a claimant to set out in detail the facts upon which he bases his claim." 507

U.S. at 168, 113 S.Ct. 1160. In *Swierkiewicz*, the Court reiterated that all that is required is "'a short and plain statement of the claim ...,'" giving "'the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" 534 U.S. at 512, 122 S.Ct. 992. In both *Leatherman* and *Swierkiewicz*, the Court applied the principle of statutory construction, "*expressio unius est exclusio alterius*," to reject the creation of a heightened pleading standard for claims other than those specifically covered by Rule 9(b) of the Federal Rules of Civil Procedure. *Leatherman*, 507 U.S. at 168, 113 S.Ct. 1160; *Swierkiewicz*, 534 U.S. at 513, 122 S.Ct. 992.[2] Thus, all claims for relief, other than those based upon fraud or mistake, fall within the "liberal system of 'notice pleading'" which "'[does] not require a claimant to set out in detail the facts upon which he bases his claim.'" *Leatherman*, 507 U.S. at 168, 113 S.Ct. 1160. "A requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" *Swierkiewicz*, 534 U.S. at 515, 122 S.Ct. 992.

*Leatherman* and *Swierkiewicz* make clear that courts are not to establish a heightened pleading requirement simply because certain kinds of claims are likely to result in substantial litigation costs or because it is highly doubtful that the claimant will ultimately prevail. As remarked in *Swierkiewicz*:

> Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. "'Indeed it may appear on the face of the pleadings

---

2. Rule 9(b) provides:

 In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

that a recovery is very remote and unlikely but that is not the test.' "
534 U.S. at 515, 122 S.Ct. 992.

■ Despite the plain import of this Supreme Court precedent, Defendants insist that, even after *Swierkiewicz,* the Third Circuit reaffirmed a heightened pleading standard for alleging concerted action in a section 1 claim, citing *Lum v. Bank of America,* 361 F.3d 217 (3d Cir. 2004). Significantly, however, plaintiffs in *Lum* contended that the purported antitrust conspiracy had been carried out through fraud, a matter that the Federal Rules requires to be pled with particularity. Fed.R.Civ.P. 9(b). Judge Roth, speaking for the court in *Lum,* specifically observed, "[b]ecause plaintiffs have alleged fraud as a basis for their antitrust cause of action, this claim is subject to the heightened pleading requirement of Rule 9(b)." 361 F.3d at 229. Thus, contrary to Defendants' assertion, *Lum* does not "reaffirm" the existence of a heightened pleading standard for claims presented under section 1 of the Sherman Act. Indeed, in a post-*Leatherman* decision, our Court of Appeals expressly declined to adopt a heightened pleading standard for section 1 claims, even if they were likely to be expensive and unlikely to be successful, explaining that "such impatience with the notice pleading embodied in the Federal Rules is foreclosed by ... *Leatherman* ...." *Brader v. Allegheny Gen. Hosp.,* 64 F.3d 869, 876 (3d Cir.1995).

Finally, the peculiar factual context of *PepsiCo* precludes reliance upon it as establishing a heightened pleading standard applicable to all antitrust conspiracy claims. At play in *PepsiCo* was the Soft Drink Interbrand Competition Act of 1980, 15 U.S.C. §§ 3501–3503, which provided protection against antitrust claims involving exclusive territorial distribution agreements that were common to the soft drink industry. *PepsiCo,* 836 F.2d at 176. Our

Court of Appeals recognized that if there was substantial and effective competition within the territory in question, a territorial distribution agreement could be enforced without violating the antitrust laws. *Id.* at 177. In such a circumstance, the plaintiff had to plead and establish an absence of substantial and effective competition within the territory in order to present a viable section 1 claim. Thus, the court observed, "[b]ecause the soft drink industry is involved, [plaintiff] has a pleading burden much higher than that in a mine-run antitrust complaint." *Id.* at 181. Accordingly, *PepsiCo* cannot be read as establishing a heightened pleading standard for antitrust conspiracy claims in general.

In summary, "[n]o heightened pleading requirements apply in antitrust cases." *Todd,* 275 F.3d at 198; *accord Brader,* 64 F.3d at 876–77. The question remains whether the averments of the Complaint are adequate to present a viable section 1 claim against either Bemis or MACtac, given the absence of any allegations that either defendant participated in any meetings or engaged in any discussions with the other Defendants or other self-adhesive labelstock producers. Stated otherwise, the question is whether, as to Bemis and MACtac, the complaint "narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *U.S. Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623, 626 (7th Cir.2003).

**B. Concerted Action Based on Consciously Parallel Conduct of Competitors**

■ Although allegations of meetings and communications are not required to present a viable antitrust conspiracy claim, a complaint must identify "the conspiracy's participants, purpose and motive [in order] to survive a motion to dismiss." *Fuentes v. South Hills Cardiology,* 946 F.2d at 202.

Plaintiffs have identified Bemis and MAC-tac as two of several participants in the purported conspiracy, the purpose of the conspiracy, which was to fix prices, and the motive, which was to restrain competition in order to assure market share and profitability. Thus, it would appear that Plaintiffs have satisfied their pleading burden.

■ Bemis and MACtac, however, contend that their participation as co-conspirators rests upon a naked conclusion. (Reply Brief in Support of Motion to Dismiss, Dkt. Entry 78, at 2.) It is, of course, established that " '[a] general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action ....' " *Fuentes,* 946 F.2d at 201–02. It is also true, however, that the existence of a conspiracy may be shown by inference. *See Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 445–47 (3d Cir.1977).

The moving Defendants argue that only where the complaint explicitly alleges consciously parallel conduct by competitors does a plaintiff present a viable claim of conspiracy by inference. (Reply Br. in Supp. of Mot. to Dismiss at 3–4.) Defendants argue that Plaintiffs in this case cannot rely upon an inference of concerted action because they have failed to make any allegations of parallel conduct. At oral argument, counsel for the moving Defendants conceded that if the Amended Complaint does present a theory of conscious parallelism, so that the holding in *Bogosian* applies here, the Amended Complaint survives their motion to dismiss. (Tr. at 10.) Plaintiffs' counsel responded by asserting that the Complaint adequately alleges "an interdependent conscious parallelism theory." (*Id.* at 26.)

■■ "The law is settled that proof of consciously parallel business behavior is circumstantial evidence from which an agreement, tacit or express, can be inferred but that such evidence, without more, is insufficient unless the circumstances under which it occurred make the inference of rational, independent choice less attractive than that of concerted action." *Bogosian,* 561 F.2d at 446. Thus, for example, in order to survive a summary judgment motion, a plaintiff must adduce evidence of both consciously parallel conduct as well as certain "plus factors." *In re: Flat Glass,* 385 F.3d at 360. While no exhaustive list of the "plus factors" exists, our Court of Appeals has identified at least three such factors:

> (1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) 'evidence implying a traditional conspiracy.'

*Id.* Significantly, however, a plaintiff "need *not* allege the existence of these plus factors in order to plead an antitrust cause of action." *Lum,* 361 F.3d at 230 (emphasis added) (citing *Bogosian,* 561 F.2d at 446);[3] *accord North Jackson Pharmacy, Inc. v. Express Scripts, Inc.,* 345 F.Supp.2d 1279, 1286 (N.D.Ala.2004) ("Just as an employment-discrimination plaintiff need not allege 'circumstances that support an inference of discrimination,' *Swierkiewicz,* 534 U.S. at 510, 122 S.Ct. 992, there is no need for an antitrust plaintiff to allege a 'plus factor [which] generates an inference of illegal price fixing.' "). The question here, therefore, is whether the averments of the Amended Complaint adequately present a

**3.** In light of *Bogosian* and *Lum,* there is no need to consider the persuasiveness of *Twombly v. Bell Atlantic Corp.,* 313 F.Supp.2d 174 (S.D.N.Y.2003), on which Defendants rely and which held that plaintiffs pursuing a con-

scious parallelism theory must allege in the complaint the "plus factors" they contend support an inference of concerted action. *Id.* at 181–82.

theory of concerted action based upon consciously parallel business conduct.

The Amended Complaint states that MACtac and Avery generally did not compete for customers. (Amended Complaint, ¶ 48.) It further avers that MACtac had newly developed excess capacity, and it was therefore in its economic self-interest to compete on price to utilize such production capacity. (*Id.* ¶ 49.) Plaintiffs allege that UPM–Kymmene was able to enter the North American market notwithstanding MACtac's excess production capacity because prices had been maintained at supracompetitive levels. As evidence of an understanding between Avery and MACtac to restrain competition through agreements to maintain price stability, Plaintiffs point to the statement of MACtac's President and CEO that price competition from UPM–Kymmene had "ruined the industry." (*Id.* at ¶ 52.)

These averments of the Amended Complaint are adequate to support a reasonable inference of consciously parallel conduct on the part of these two entities. Context is important in assessing the adequacy of a pleading asserting concerted action. Prior to Raflatac entering the North American market, Avery and MACtac were by far the two largest producers of self-adhesive labelstock. MACtac had newly developed production capacity that remained idle. Entry of a new producer in the presence of excess capacity tends to suggest that the existing producers "were charging supracompetitive prices." *In re: Flat Glass*, 385 F.3d at 362. A decision to refrain from competing with Avery appears inconsistent with MACtac's own economic interests. The economic conditions described in the Complaint also suggest

that the self-adhesive labelstock market was "susceptible to efforts to maintain supracompetitive prices." *Id.* at 361.

■ "Factual allegations in a complaint—even if 'conclusory'—are sufficient if they allow the defendant to understand the gist of the plaintiff's claim, thereby making it possible to formulate a meaningful response. . . ." *North Jackson Pharmacy*, 345 F.Supp.2d at 1285–86. The Amended Complaint's averments concerning MACtac, albeit sparse, are sufficient to satisfy this purpose. Details as to "when and how" MACtac and Avery engaged in parallel conduct and the precise contours of any agreement or understanding "would likely be known only by the 'alleged co-conspirators,' and hence should *not* be required in the complaint." *Id.* at 1288. "The hurdle at the motion to dismiss stage in a notice pleading setting such as this is relatively low, because there exist later mechanisms for determining factual disputes." *In re: Carbon Black*, 2005 WL 102966, at *6. A plaintiff satisfies its burden at the pleading stage " 'when the suggested inferences rise to what experience indicates is an acceptable level of probability.' " *Id.* In this case, Plaintiffs have provided adequate notice of the nature of their claim against MACtac, the claim is "based on reasonable inferences to be drawn from a series of observed actions, business practices, and market conditions," *id.* at *7, and the alleged conduct meets the "acceptable level of probability" test at the pleading stage. Moreover, "plaintiffs' theory of conspiracy—an agreement among oligopolists to fix prices at a supracompetitive level—makes perfect economic sense." *In re: Flat Glass*, 385 F.3d at 358.[4] In other words, the Amended Com-

---

4. Cases on which Defendants have relied to urge dismissal of the Amended Complaint with prejudice involved alleged conspiracies that were implausible or made no economic sense. For example, in *Brunson Communica-* *tions, Inc. v. Arbitron, Inc.*, 239 F.Supp.2d 550, 563 (E.D.Pa.2002), the court dismissed a section 1 claim for failure to allege the requisite concerted conduct "for the simple reason that the supposed conspiracy 'makes no eco-

plaint presents a claim based upon consciously parallel conduct of competitors, and, as Defendants concede, *Bogosian* thus compels denial of their motion to dismiss.

### C. The Alleged Concerted Action on the Part of Bemis

"A parent company cannot conspire with its wholly owned subsidiary for purposes of section 1 of the Sherman Act." *PepsiCo*, 836 F.2d at 181. Moreover, as Defendants argue, "a parent corporation is not liable for the acts of its subsidiary allegedly in violation of federal antitrust laws simply by virtue of that ownership interest." (Br. in Supp. of Mot. to Dismiss at 19.) Indeed, both in their opposing brief and at oral argument, plaintiff eschewed any theory of vicarious liability against Bemis. (Br. in Opp. to Mot. to Dismiss at 25) ("Plaintiffs do not seek to hold Bemis liable simply because it is MACtac's parent . . . ."); Tr. at 29 ("we are not seeking to impose liability on Bemis as a vicarious parent of [MACtac]").

Bemis contends that the only basis for its purported liability alleged in the Amended Complaint is its agreement to sell MACtac to UPM–Kymmene. Citing *Kalmanovitz v. G. Heileman Brewing Co.*, 769 F.2d 152, 156 (3d Cir.1985), Bemis asserts that the mere sale of a subsidiary cannot give rise to antitrust liability.

Contrary to Bemis' assertion, the Amended Complaint does not only allege its agreement to sell MACtac to UPM–Kymmene. It also alleges that, by agreeing to exit the self-adhesive label-stock market in North America, Bemis obtained considerable market share in the flexible packaging business in Europe. The complaint thus supports a reasonable inference of an agreement to allocate market shares as part and parcel of an effort to restrain competition. Plaintiffs also aver that Bemis was aware of the existence of an agreement to restrain price competition in the self-adhesive labelstock market and knew that its sale of MACtac furthered that end. Averments of knowledge need only be made generally. Fed. R.Civ.P. 9(b). Plaintiffs have adequately alleged knowing participation by Bemis in the challenged concerted conduct. Whether Plaintiffs can prove that assertion is not the test now. Bemis has been given fair notice of the nature of Plaintiffs' claim, and the theory of liability is neither irrational nor implausible. Accordingly, Bemis is not entitled to be dismissed from this action.

### III. CONCLUSION

Each of the apparent premises for the motion to dismiss has been shown to be unfounded. First, there is no heightened pleading standard applicable to antitrust conspiracy claims. Second, as to MACtac, Plaintiffs have presented a theory of consciously parallel business conduct that falls within *Bogosian*. Finally, liability of Bemis is not premised solely upon its agreement to sell MACtac. Accordingly, the motion to dismiss will be denied. An appropriate Order follows.

---

nomic sense.' " The court explained that there was no logical reason why the dominant party in the viewer measurement market would conspire with the larger television stations in the area to exclude plaintiff's station from the defendant's surveys, nor was there a plausible reason why the defendant would compromise the integrity of its measurements. *Id.* at 564. In *Twombly v. Bell Atlantic Corp.*, 313 F.Supp.2d 174, 188 (S.D.N.Y.

2003), the court found that the allegations of the complaint did not support an inference that refraining from competition in a given market was contrary to the purported conspirators' economic interests. Here, by way of contrast, the allegations of the Amended Complaint describe market conditions that support an inference that collusive conduct was both plausible and in the economic interests of the alleged conspirators.

## ORDER

**NOW, THIS 15th DAY OF FEBRU-ARY, 2005,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The motion to dismiss filed on behalf of Bemis Company, Inc. and Morgan Adhesives Company (Dkt. Entry 55) is **DENIED.**

2. Bemis Company, Inc. and Morgan Adhesives Company shall answer the Amended Complaint within twenty (20) days from the date of this Order.