401 F.Supp.2d 451 (2005)
In re: HYDROGEN PEROXIDE ANTITRUST LITIGATION.
This Document Relates To: Direct Purchaser Action.
No. CIV.A. 05-666, MDL No. 1682.
United States District Court, E.D. Pennsylvania.
November 22, 2005.
*452 Mario N. Alioto, Trump Alioto Trump & Prescott, LLP, San Francisco, CA, for Bernard Lawrence Winery, Plaintiff.
D. Jarrett Arp, Washington, DC, for Akzo Nobel Chemicals International B.V., Akzo Nobel, Inc., EKA Chemicals, Inc., Defendants.
Anthony J. Bolognese, Bolognese & Associates, LLC, Philadelphia, for Finch Pruyn and Company, Inc., Plaintiff.
W. Joseph Bruckner, Lockridge Grindal, Nauen & Holstein P.L.L.P., Minneapolis, MN, for Finch Pruyn and Company, Inc., Plaintiff.
Andrew B. Bullion, Bolognese & Associates, Philadelphia, for Finch Pruyn and Company, Inc., Plaintiff.
Jeffrey S. Cashdan, King & Spalding, LLP, Atlanta, GA, for Kemira Chemicals, Inc., Defendant.
Solomon B. Cera, Gold Bennett Cera & Sidener LLP, San Francisco, CA, for Finch Pruyn and Company, Inc., Plaintiff.
Bart D. Cohen, Berger & Montague, P.C., Philadelphia, PA, for City of Philadelphia, Respondent.
Jay S. Cohen, Spector, Roseman & Kodroff, Philadelphia, PA, for Chem/Serv, Inc., Notice Only Party.
Lani C. Cossette, Washington, DC, for Finch Pruyn and Company, Inc., Plaintiff.
Stephen P. Cummings, King & Spalding, LLP, Atlanta, GA, for Kemira Chemicals, Inc., Defendant.
Alan J. Davis, Ballard Spahr Andrews & Ingersoll LLP, Philadelphia, PA, for Solvay America, Inc., Solvay Chemicals, Inc., Defendants.
Amanda C. Denaro, Sullivan & Cromwell LLP, Palo Alto, CA, for Solvay America, Inc., Solvay Chemicals, Inc., Solvay Interox, Inc., Defendants.
Robert G. Eisler, Lieff Cabraser Heimann & Bernstein, New York, NY, for Young Chemical Company, Notice Only Party.
Vincent J. Esades, Minneapolis, MN, for Finch Pruyn and Company, Inc., Plaintiff.
Michael I. Frankel, Dechert, Philadelphia, PA, for FMC Corporation, Defendant.
Agnieszka M. Fryszman, Cohen, Millstein, Hausfeld & Toll, LLC, Washington, DC, for Finch Pruyn and Company, Inc., Plaintiff.
Reena Gambhir, Cohen, Millstein, Hausfeld & Toll, LLC, Washington, DC, for Finch Pruyn and Company, Inc., Plaintiff.
Nancy J. Gellman, Conrad O'Brien Gellman & Rohn PC, Philadelphia, PA, for Akzo Nobel Chemicals International B.V., Akzo Nobel, Inc., EKA Chemicals, Inc., Defendants.
Mark S. Goldman, Goldman Scarlato & Karon PC, Conshohocken, PA, for Young Chemical Company, Notice Only Party.
Ruthanne Gordon, Berger & Montague, P.C., Philadelphia, PA, for City of Philadelphia, Respondent.
Joshua H. Grabar, Bolognese & Associates, LLC, Philadelphia, PA, for Lensco Products, Inc., Northern Chemical Corporation, Roberts Chemical Company, Inc., Standard Technology Applied Resources, Inc., James R. Pacific, Finch Pruyn and Company, Inc., Plaintiffs.
Steven J. Greenfogel, Meredith, Cohen & Greenfogel, P.C., Philadelphia, PA, for Emco Chemical Distributors, Inc., Notice Only Party.
Stanley Grossman, Pomerantz, Levy, Haudek, Block & Grossman, New York, NY, for Finch Pruyn and Company, Inc., Plaintiff.
*453 Michael D. Hausfeld, Cohen, Milstein, Hausfeld and Toll, Washington, DC, for Finch Pruyn and Company, Inc., Plaintiff.
Samuel D. Heins, Heins Mills & Olson PLC, Minneapolis, MN, for Finch Pruyn and Company, Inc., Plaintiff.
William E. Hoese, Kohn, Swift & Graf, P.C., Philadelphia, PA, for Lincoln Paper & Tissue, LLC, Notice Only Party.
Russel N. Jacobson, Pomerantz Haudek, Block Grossman & Gross LLP, New York, NY, for Finch Pruyn and Company, Inc., Plaintiff.
Laura M. Kam, O'Melveny & Myers LLP, Washington, DC, for Degussa Corporation, Defendant.
Steven A. Kanner, Much Shelist Freed, Denenberg Ament & Rubenstein, Chicago, IL, for Finch Pruyn and Company, Inc., Plaintiff.
Robert N. Kaplan, Kaplan Fox & Kilsheimer LLP, New York, NY, for Finch Pruyn and Company, Inc., Plaintiff.
Richard J. Kilsheimer, Kaplan Fox & Kilsheimer LLP, New York, NY, for Finch Pruyn and Company, Inc., Plaintiff.
Sunny H. Kim, Lockridge Grindel Nauen, Minneapolis, MN, for Finch Pruyn and Company, Inc., Plaintiff.
Jeffrey A. Klafter, Klafter & Olsen LLP, White Plains, NY, for Finch Pruyn and Company, Inc., Plaintiff.
Jason C. Lo, Los Angeles, CA, for Akzo Nobel Chemicals International B.V., Akzo Nobel, Inc., EKA Chemicals, Inc., Defendants.
Richard A. Lockridge, Lockrigde Grindal, Nauen & Holstein P.L.L.P., Minneapolis, MN, for Finch Pruyn and Company, Inc., Plaintiff.
William London, Much Shelist Freed, Denenberg Ament & Rubenstein, P.C., Chicago, IL, for Finch Pruyn and Company, Inc., Plaintiff.
Monica K. Loseman, Gibson, Dunn & Crutcher, LLP, Denver, CO, for Akzo Nobel Chemicals International B.V., Akzo Nobel, Inc., EKA Chemicals, Inc., Defendants.
Barbara W. Mather, Pepper Hamilton LLP, Philadelphia, PA, for Kemira Chemicals, Inc., Kemira OYJ, Defendants.
Christopher J. McDonald, Labaton Sucharow & Rudoff, LLP, New York, NY, for Finch Pruyn and Company, Inc., Plaintiff.
Thomas J. McGarrigle, Philadelphia, PA, for Degussa Corporation, Defendant.
Stephen C. McKenna, Gibson, Dunn & Crutcher, LLP, Denver, CO, for Akzo Nobel Chemicals International B.V., Akzo Nobel, Inc., EKA Chemicals, Inc., Defendants.
Ellen Meriwether, Miller Faucher & Cafferty LLP, Philadelphia, PA, for Atlantis Caribbean Chemical Corp., Notice Only Party.
Douglas A. Millen, Much Shelist Freed, Denenberg Ament & Rubenstein, PC, Chicago, IL, for Finch Pruyn and Company, Inc., Plaintiff.
H. Laddie Montague, Jr., Berger & Montague PC, Philadelphia, PA, for City of Philadelphia, Respondent.
Karin F.R. Moore, O'Melveny & Myers, LP, Washington, DC, for Degussa Corporation, Defendant.
Krishna B. Narine, Law Office of Krishna B. Narine, Elkins Park, PA, for Jimmy F. Hux, Finch Pruyn and Company, Inc., Bernard Lawrence Winery, Plaintiffs.
Linda P. Nussbaum, Cohen, Milstein, Hausfeld & Toll, New York, NY, for Finch Pruyn and Company, Inc., Plaintiff.
*454 Adam S. Paris, Sullivan & Cromwell LLP, Los Angeles, CA, for Solvay America, Inc., Solvay Chemicals, Inc., Solvay Interox, Inc., Defendants.
William H. Parish, Parish & Small, Stockton, CA, for City of Stockton, Notice Only Party.
Richard G. Parker, O'Melveny & Myers, LLP, Washington, DC, for Degussa Corporation, Defendant.
Joseph M. Patane, Law Office of Joseph M. Patane, San Francisco, CA, for Bernard Lawrence Winery, Plaintiff.
Bernard Persky, Labaton Sucharow & Rudoff, LLP, New York, NY, for Finch Pruyn and Company, Inc., Plaintiff.
Burt M. Rublin, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Solvay America, Inc., Solvay Chemicals, Inc., Solvay Interox, Inc., Solvay S.A., Defendants.
Francis O. Scarpulla, San Francisco, CA, for Finch Pruyn and Company, Inc., Bernard Lawrence Winery, Jimmy F. Hux, Plaintiffs.
Howard D. Scher, Buchanan Ingersoll, PC, Philadelphia, PA, for Arkema Inc., Atofina Chemicals, Inc., Defendants.
Howard J. Sedran, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, for Astro Chemicals, Inc., Notice Only Party.
Daniel G. Swanson, Gibson, Dunn & Crutcher, LLP, Los Angeles, CA, for Akzo Nobel Chemicals International B.V., Akzo Nobel, Inc., Eka Chemicals, Inc., Defendants.
Joseph A. Tate, Dechert LLP, Cira Centre, Philadelphia, PA, for FMC Corporation, Defendant.
Steven W. Thomas, Sullivan & Cromwell LLP, Los Angeles, CA, for Solvay America, Inc., Solvay Chemicals, Inc., Solvay Interox, Inc., Defendants.
Kenneth I. Trujillo, Trujillo Rodriquez & Richards, Philadelphia, PA, for City of Philadelphia, Respondent.
Hima Vatti, O'Melveny & Myers, LLP, Washington, DC, for Degussa Corporation, Defendant.
David H. Weinstein, Weinstein Kitchenoff Asher LLC, Philadelphia, PA, for Ohio Chemical Services, Inc., Notice Only Party.
Jason A. Zweig, Kaplan Fox & Kilsheimer LLP, New York, NY, for Finch Pruyn and Company, Inc., Plaintiff.

MEMORANDUM
DALZELL, District Judge.
On January 31, 2005, European Commission antitrust regulators charged eighteen hydrogen peroxide manufacturers with price-fixing. Eleven days later, a buyer filed the first of thirty-three federal putative class actions alleging that the world's leading hydrogen peroxide manufacturers horizontally restrained trade from 1994 to the present. In the wake of that initial filing, the Judicial Panel on Multidistrict Litigation transferred every cognate federal action to us. See In re Hydrogen Peroxide Antitrust Litig., 374 F.Supp.2d 1345 (Jud.Pan.Mult.Lit.2005). We consolidated these cases and then divided them into two actions, one for direct purchasers, the other for indirect purchasers. See Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).
Before us is the joint Rule 12(b)(6) motion to dismiss the consolidated amended class action complaint (the "complaint") in the direct-purchaser action that eleven defendants filed. This complaint alleges one count, a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. In their motion, defendants urge us to employ a heightened *455 pleading standard akin to that in Rule 9(b) or the Private Securities Litigation Reform Act of 1995 § 101(b), Pub.L. No. 104-67, 109 Stat. 737, 743 (codified at 15 U.S.C. § 78u-4 (2004)). Because using a heightened standard would defy text, jurisprudence, and policy, we shall decline their invitation.
Instead, we shall apply Rule 8(a), which, of course, requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Because plaintiffs have identified the alleged conspiracy's participants, purpose, and motive, the complaint satisfies Rule 8(a), see Fuentes v. South Hills Cardiology, 946 F.2d 196, 202 (3d Cir.1991), and we shall deny defendants' motion.
A. The Consolidated Amended Class Action Complaint
Plaintiffs allege that, from January 1, 1994 to January 5, 2005 (the "class period"), defendants conspired to fix the price of hydrogen peroxide and two downstream products, sodium perborate and sodium percarbonate (collectively, "hydrogen peroxide"), sold in the United States. Compl. ¶ 1.
1. The Parties
Nineteen named plaintiffs have sued thirteen[1] defendants. Id. ¶¶ 6-10; 11-30. During the class period, plaintiffs allegedly bought hydrogen peroxide directly from defendants. Id. ¶¶ 1, 6. There are two plaintiff classes, one private (i.e., corporations) and the other governmental (i.e., municipalities). Id. ¶¶ 7, 10. Of the nineteen plaintiffs, seventeen are private and two governmental. Id. ¶¶ 6-9.
Defendants produce and sell nearly all the hydrogen peroxide sold in the United States. Id. ¶ 38(b). Eight defendants are based in the United States, and five are based in Europe. Id. ¶¶ 11-29. They fall into six groups:
(1) Arkema, Inc. and Arkema S.A. (the "Atofina Defendants");
(2) Solvay Chemicals, Inc., Solvay America, Inc., and Solvay S.A. (the "Solvay Defendants");
(3) Degussa Corporation and Degussa A.G. (the "Degussa Defendants");
(4) EKA Chemicals, Inc., Akzo Nobel, Inc., and Akzo Nobel Chemical International B.V.[2] (the "Akzo Defendants");
(5) Kemira Chemicals, Inc. and Kemira Oyj (the "Kemira Defendants"); and
(6) FMC Corporation.
Id. ¶¶ 11-29. Plaintiffs allege that these defendants, with unnamed partners, conspired to fix the price of hydrogen peroxide. Id. ¶¶ 1, 6, 31, 39-48.
2. The Hydrogen Peroxide Industry
Hydrogen peroxide is a colorless, syrupy inorganic chemical compound (H2 O2) that acts as a strong oxidizing agent. Id. ¶ 36. While most people's experience is limited to dabbing or pouring it on a fresh wound, hydrogen peroxide's uses are far more varied. The pulp, paper, and textile industries use it to bleach their products, and municipalities use it to treat drinking and *456 industrial-waste water. Id. Companies also use hydrogen peroxide to manufacture sodium percarbonate, an ingredient in cleaning products, and sodium perborate, which is used in automatic dishwashing and laundry powders as a hot water bleaching agent. Id. ¶ 37.
The hydrogen peroxide industry has several structural characteristics, plaintiffs claim, that facilitate cartelization. First, because hydrogen peroxide is a homogenous product, it is a fungible commodity, forcing sellers to compete primarily on price. Id. ¶ 38. Second, the hydrogen peroxide industry is highly concentrated; indeed, this case's defendants, plaintiffs claim, "account[] for virtually all Hydrogen Peroxide production in the United States." Id. Last, formidable barriers  such as large start-up costs, high market concentration, and, at most, a moderate rate of return  deter new entrants. Id.
3. The Conspiracy
Plaintiffs claim that defendants capitalized on the industry's vulnerability by conspiring to inflate the price of hydrogen peroxide. Id. ¶ 1. Plaintiffs assert that defendants:
(1) communicated about the prices they would charge;
(2) agreed to charge prices at certain levels;
(3) exchanged information on prices and sales volume;
(4) allocated markets and customers;
(5) agreed to reduce production capacity;
(6) monitored each other; and
(7) sold hydrogen peroxide at agreed prices.
Id. ¶ 45. The purpose of the conspiracy, plaintiffs claim, was to "effectuat[e] the unlawful arrangements to fix, maintain, raise or stabilize prices of Hydrogen Peroxide." Id. ¶ 46.
Throughout the class period, plaintiffs allege, defendants periodically increased their price by an identical amount, either simultaneously or in quick succession. Id. ¶ 47. In November of 2002, for example, the six domestic defendants allegedly increased their price by three cents per pound "virtually simultaneous[ly]." Id. Similarly, in late October of 2002, on the heels of an industry meeting in Houston, Texas, every defendant  either in quick succession or simultaneously  raised its price by three cents per pound.[3]Id. According to plaintiffs, these examples typify defendants' periodic, coordinated price increases throughout the class period.
4. The Effects
Defendants' unlawful conduct, plaintiffs claim, allowed defendants to reap supracompetitive[4] profits and, correspondingly, *457 forced plaintiffs to pay supracompetitive prices: "[P]laintiffs and members of the [private and governmental] Classes had to pay more for Hydrogen Peroxide than they would have paid in a competitive marketplace unfettered by defendants' and their co-conspirators' collusive and unlawful price-fixing." Id. ¶ 55. In other words, plaintiffs claim that defendants' conspiracy caused antitrust injuries to their businesses and property. Id. ¶¶ 1, 56.[5]
Having described the complaint, we now consider whether it should survive the motion to dismiss.
B. Legal Analysis
Plaintiffs claim that defendants conspired to manipulate the price and output of hydrogen peroxide artificially, which, if true, would violate Section 1 of the Sherman Act, 15 U.S.C. § 1. Section 1 prohibits "every contract, combination . . . or conspiracy, in restraint of trade or commerce. . . ." To plead a Section 1 claim, it is well-settled that a plaintiff must allege: (1) a contract, combination, or conspiracy, (2) a restraint of trade, and (3) an effect on interstate commerce.[6]United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 218-21, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); Fuentes v. South Hills Cardiology, 946 F.2d 196, 198 (3d Cir.1991) (citing Weiss v. York Hosp., 745 F.2d 786, 812 (3d Cir.1984), cert. denied, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985)). Here, it is undisputed that plaintiffs adequately pleaded the latter two elements; therefore, their dispute centers on the first, i.e., conspiracy.
Under Rule 12(b)(6), we may dismiss a complaint for "failure to state a claim upon which relief can be granted." In addition to taking all factual allegations as true, we must draw all reasonable inferences in plaintiffs' favor. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir.2000). Rule 12(b)(6) permits dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him *458 to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
Generally, a court must evaluate a complaint's sufficiency through the lens of Rule 8(a). In contrast to many state pleading regimes, which require fact pleading, Rule 8(a) requires only notice pleading. This means that a plaintiff need not "set out in detail the facts upon which he bases his claim," Conley, 355 U.S. at 47, 78 S.Ct. 99, and instead need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Rule 8(a). Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47, 78 S.Ct. 99.
1. The Incorrect Standard
The heart of defendants' argument is that the complexity of this matter requires us to use a heightened pleading standard. Text, jurisprudence, and policy say otherwise. Beginning with text, unless a complaint falls specifically within Rule 9(b), Rule 8(a) governs.
Rule 9(b) creates two categories of claims that require particularized allegations: "In all averments of [1] fraud or [2] mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Here, given that the complaint does not aver fraud or mistake, Rule 9(b) does not govern but Rule 8(a) does.
Rule 8(a)'s plain terms set a low threshold. They merely require a "short and plain statement of the claim. . . ." Consequently, to demand a heightened standard for antitrust claims would be to amend, under the guise of judicial interpretation, the plain terms of Rule 8(a). Responsibility for such a wholesale rewriting resides in the first instance with the Advisory Committee on the Federal Rules of Civil Procedure, which, rather pointedly, on October 21, 1993, rejected the idea of adding antitrust claims to the category of claims one must plead with particularity. See Minutes of the Advisory Committee on the Federal Rules of Civil Procedure, Oct. 21, 1993, 1993 WL 761148, at *6-7.[7]
Two Supreme Court cases fortify this conclusion. In Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court unanimously held that federal courts may not apply a "heightened pleading standard" in civil rights cases alleging municipal liability under 42 U.S.C. § 1983. The Court reasoned that while "the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions," those rules do not "include among the enumerated actions any reference to complaints alleging municipal liability under § 1983." Id. at 168, 113 S.Ct. 1160. In other words, because Rule 9(b) did not mention municipal liability under § 1983, one could only infer its inclusion in Rule 8(a).[8]
*459 Similarly, in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the Supreme Court held that an employment discrimination complaint need not contain specific facts establishing prima facie discrimination under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As in Leatherman, the Court reasoned that, because Rule 9(b) did not list employment discrimination claims, "complaints in these cases, as in most others, must satisfy only the simple requirements of Rule 8(a)." Id. at 513, 122 S.Ct. 992. Just as Rule 9(b) makes no mention of municipal liability or employment discrimination, neither does it mention horizontal trade restraints. Thus, Rule 8(a) not only applies, but means what it says.
We have not overlooked the policy considerations at play. To be sure, requiring plaintiffs to plead antitrust claims with heightened specificity might deter frivolous claims. Antitrust cases, which require heavy discovery and sophisticated defense counsel, are costly to defend. But the toll such a policy would exact would be to discourage legitimate claims as well as the frivolous. This is because conspiracies are necessarily secret, and thus "key facts supporting a claim are [often] peculiarly within the other party's knowledge." 2 Phillip E. Areeda, Roger D. Blair, & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application § 307b, at 67 (2d ed.2000). Policy analysis therefore fortifies our textual reading.[9]
2. The Correct Standard and Its Application
Having explained why a heightened standard is unwarranted and unwise, we now explain and apply the correct standard. Under Rule 8(a), to plead an antitrust conspiracy one must allege the "conspiracy's [1] participants, [2] purpose, and [3] motive. . . ." Fuentes v. South Hills Cardiology, 946 F.2d 196, 202 (3d Cir.1991); accord In re: Pressure Sensitive Labelstock Antitrust Litig., 356 F.Supp.2d *460 484, 491 (M.D.Pa.2005); In re Elec. Carbon Prods. Antitrust Litig., 333 F.Supp.2d 303, 310 (D.N.J.2004); In re Linerboard Antitrust Litig., MDL No. 1261, 2000 WL 1475559, at *6 (E.D.Pa. Oct. 4, 2000); Biovail Corp. Int'l v. Aktiengesellschaft, 49 F.Supp.2d 750, 777 (D.N.J.1999); Swarthmore Radiation Oncology, Inc. v. Lapes, 812 F.Supp. 517, 520 (E.D.Pa.1992).
Here, the complaint satisfies each component. Plaintiffs identify each defendant as a participant, Compl. ¶¶ 11-29, 39-48, and allege that the conspiracy's purpose was artificially to raise the price of hydrogen peroxide. Id. ¶ 46. Plaintiffs aver, and one may reasonably infer from the complaint as a whole, that defendants' motive was that of any business, to profit. Id. ¶¶ 1, 44-48, 55. Section 1 pleading requires no more than this. Fuentes, 946 F.2d at 202.
Beyond pleading the conspiracy's participants, purpose, and motive, plaintiffs also allege:
(1) the conspiracy's timing and duration, Compl. ¶¶ 1, 44;
(2) the conspiracy's mechanics, id. ¶¶ 39-48;
(3) the hydrogen peroxide industry's structure, id. ¶¶ 36-38;
(4) the European Union's regulatory investigation and the United States Department of Justice's criminal investigation, id. ¶¶ 49, 50;
(5) the conspiracy's effects, id. ¶¶ 55-56;
(6) the names of executives who attended the industry meetings, id. ¶ 39; and
(7) examples of coordinated price increases, id. ¶ 47.
With such detail, it is unsurprising that one defendant answered. Indeed, eleven defendants readily described the very claims that supposedly lack factual support. See In re Tower Air, 416 F.3d 229, 237-38 (3d Cir.2005) ("To say that a plaintiff's claim appears factually weak is not to say that he states no claim. That truism is particularly obvious where, as here, a defendant's motion to dismiss articulates the plaintiff's claims that supposedly lack factual support. . . .") (citing Alston v. Parker, 363 F.3d 229, 234 (3d Cir.2004)).
In sum, the complaint satisfies Rule 8(a) because it fairly puts defendants on notice about plaintiffs' claims.[10]
C. Conclusion
Judge Sack's recent opinion for the Second Circuit in Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir.2005) seems particularly fitting here:
We have consistently rejected the argument  put forward by successive generations of lawyers representing clients defending against civil antitrust claims  that antitrust complaints merit a more rigorous pleading standard, whether because of their typical complexity and sometimes amorphous nature, or because of the related extraordinary burdens that litigation beyond the pleading stage may place on defendants and the courts.
Id. at 108; see also id. at 117-19 (reversing Rule 12(b)(6) dismissal of antitrust complaint for inadequate specificity). Defendants advance the same argument here as that of the "successive generations" before *461 them, and we decline their invitation to use a heightened pleading standard.
Accordingly, we shall deny defendants' motion to dismiss. An Order follows.

ORDER
AND NOW, this 22nd day of November, 2005, upon consideration of defendants' motion to dismiss the consolidated amended class action complaint (Civ. No. 05-666, docket entry # 100), plaintiffs' response (Civ. No. 05-666, docket entry # 106), and defendants' reply (Civ. No. 05-666, docket entry # 117), and for the reasons enunciated in our accompanying memorandum of law, it is hereby ORDERED that defendants' motion to dismiss is DENIED.

ORDER
AND NOW, this 22nd day of November, 2005, upon consideration of defendant Solvay S.A.'s ("Solvay'"s) Fed.R.Civ.P. ("Rule") 12(c) motion for judgment on the pleadings (Civ. No. 05-666, docket entry # 101) and plaintiffs' response (Civ. No. 05-666, docket entry # 105), and the Court finding that:
(a) Before us is Solvay's motion for a Rule 12(c) judgment on the pleadings, which is governed by the same standard that governs Rule 12(b)(6) motions to dismiss, see, e.g., Spruill v. Gillis, 372 F.3d 218, 223 n. 2 (3d Cir.2004); Leamer v. Fauver, 288 F.3d 532, 535 (3d Cir.2002);
(b) Solvay's motion incorporates  and adds nothing to  its co-defendants' memorandum in support of their motion to dismiss the direct purchaser plaintiffs' consolidated amended class action complaint, see Def.'s Mot. ¶¶ 1-4; and
(c) Because (1) Solvay's motion relies on the same arguments its co-defendants presented, (2) the same standard governs both, and (3) we rejected its co-defendants' arguments, we shall deny Solvay's motion for the same reasons we today deny its co-defendants' motion,
It is hereby ORDERED that defendant's Rule 12(c) motion for a judgment on the pleadings is DENIED.
NOTES
[1] While plaintiffs initially sued fourteen defendants, on August 29, 2005, they voluntarily dismissed Total S.A., a French corporation with its principal place of business in Courbevoie, France. See id. ¶ 13; August 29, 2005 Notice of Voluntary Dismissal of Defendant Total S.A. (MDL No. 05-1682, docket entry # 17).
[2] On August 29, 2005, the parties also stipulated to the substitution of Akzo Nobel Chemical International B.V. in place of Akzo Nobel N.V. See id. ¶ 25; August 29, 2005 Stipulation of Dismissal (MDL No. 05-1682, docket entry 20, 21).
[3] Plaintiffs claim that this particular practice  coordinated price increases right after industry meetings  occurred throughout the class period. Id. ¶¶ 39-40. Plaintiffs identify the executives who generally attended these industry meetings:

 FMC: William Walter, William Harvey, Daniel Summers, Michael Smith, Lynda Myrick, and Joseph Cipia;
 Degussa Defendants: Richard Owens;
 Solvay Defendants: Gary Hall and Whit Sadler;
 Atofina Defendants: Billy Tulos;
 Akzo Defendants: Dag Stromquist; and
 Kemira Defendants: Risto Ojola, Robert Scanlon, and Seth Spurlock.
Id. ¶ 39.
[4] In antitrust jurisprudence, courts use the adjective "supracompetitive" to mean above-competitive. See, e.g., Harrison Aire, Inc. v. Aerostar Intl., Inc., 423 F.3d 374, 381 (3d Cir.2005) ("Monopoly power can be demonstrated with . . . direct evidence of supracompetitive pricing"); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 528 (3d Cir.2004) (noting that a monopoly would permit Dupont to "charge supracompetitive prices for Coumadin").
[5] Defendants' activities triggered two official investigations, one by the European Commission and the other by the Criminal Enforcement Section of the Antitrust Division of the United States Department of Justice. Id. ¶¶ 49, 50.
[6] In interpreting Section 1's condemnation of agreements in restraint of trade, courts must reconcile the tension between two legal rules. The first requires courts to apply a simple, bright-line test (or "per se" rule) that focuses solely on whether certain conduct occurred. The second, in contrast, requires courts to use a multifactored reasonableness test (the "rule of reason") to measure the purpose and effect of challenged conduct. See Robert H. Bork, The Rule of Reason and the Per Se Concept: Price Fixing and Market Division (pt. 1), 74 Yale L.J. 775 (1965); Robert H. Bork, The Rule of Reason and the Per Se Concept: Price Fixing and Market Division (pt. 2), 75 Yale L.J. 373 (1966). While some cases suggest that these rules exist as binary opposites, others suggest that they represent the endpoints of a unified continuum. See Timothy J. Muris, California Dental Association v. Federal Trade Commission: The Revenge of Footnote 17, 8 Sup.Ct. Econ. Rev. 265, 304-06 (2000) (arguing that the "supposed dichotomy" between the per se rule and the rule of reason has been replaced with the "rule of reason as a continuum").

Here, plaintiffs claim that defendants engaged in horizontal price-fixing: "where competitors at the same market level agree to fix or control the prices they will charge for their respective goods or services." In re: Flat Glass Antitrust Litig., 385 F.3d 350, 356 (3d Cir.2004) (quoting United States v. Brown Univ., 5 F.3d 658, 670 (3d Cir.1993)). The Supreme Court has long held such restraints unreasonable per se. See, e.g., United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 224 n. 59, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); Flat Glass, 385 F.3d at 356.
[7] See also Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (stating that a requirement of greater specificity for particular claims is a result "that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation"). Alternatively, if Congress saw a need to restrict antitrust class actions  as it did with securities fraud class actions when it enacted the Private Securities Litigation Reform Act  it could readily enact legislation that heightens the pleading standard in antitrust cases.
[8] Or, to use the canon of statutory construction the Court used, "Expresio unius est exclusio alterius." Leatherman, 507 U.S. at 168, 113 S.Ct. 1160; see also Swierkiewicz, 534 U.S. at 513, 122 S.Ct. 992. In other words, mention of one thing implies the exclusion of another.
[9] Defendants cite three cases from our Court of Appeals to suggest that district courts must apply a heightened pleading standard to antitrust complaints. None assists them. To the extent that Black & Yates v. Mahogany Ass'n, 129 F.2d 227 (3d Cir.1941) required plaintiffs to plead the facts underlying an alleged conspiracy, that holding was superseded decades later by Leatherman and Swierkiewicz. See also Fuentes, 946 F.2d at 202 (interpreting Black & Yates to require one to plead only the "conspiracy's participants, purpose, and motive. . . ." and forgiving the plaintiffs for not alleging "any meetings or phone calls at which the conspiracy was carried out. . . .").

Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173 (3d Cir.1988) is equally unavailing. Like Black & Yates, PepsiCo also predated Leatherman, Swierkiewicz, and Fuentes. Even putting its timing aside, PepsiCo's facts distinguish it. In PepsiCo, our Court of Appeals wrote that its "inquiry [was] confined to the single issue" of whether the Drink Interbrand Competition Act of 1980 protected a consortium of soft drink manufacturers and bottlers from Section 1 liability for horizontally restraining trade. Id. at 178. Granted the court did require a heightened pleading standard, but it did so only "[b]ecause the soft drink industry is involved. . . ." Id. at 181 (emphasis added). Since this case involves hydrogen peroxide, not soda, it does not implicate the Soft Drink Act; hence, PepsiCo is inapposite.
Last, although defendants do not much rely on it, we note that, unlike the plaintiffs in Garshman v. Universal Res. Holding, Inc., 824 F.2d 223 (3d Cir.1987), the plaintiffs here describe the conspiracy, identify the conspirators, and articulate anticompetitive effects. See id. at 230-31 (affirming a district court's Rule 12(b)(6) dismissal of a Section 1 claim because the plaintiffs failed to describe a contract or conspiracy in restraint of trade, the defendants' co-conspirators, and any anticompetitive effects). Garshman requires nothing more.
[10] We also disagree with the argument advanced in defendants' reply memorandum that, if Rule 8(a) does apply, plaintiffs failed to satisfy it. Not only do plaintiffs lay the Fuentes foundation by describing the conspiracy's participants, purpose, and motive, but they also buttress it with specific allegations about the conspiracy's timing, mechanics, and effects.